CARTER, *Appellant*, v. ARNOLD *et al.*

Division One, May 5, 1896.

1. **Contract**: CONSTRUCTION: INTENTION OF PARTIES. Effect should be given to the intention of the parties in the construction of a contract.

2. ———: ———: ———. A contract between two firms construed, and *held*, that a member of one was entitled to an individual interest in land which the firms agreed to sell and divide the profits arising therefrom.

*Appeal from Morgan Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

REVERSED AND REMANDED.

*Lipscomb & Rust* for appellant.

(1) The court erred in refusing to consider the facts and circumstances tending to show the meaning

and intention of the contract of January 18. (2) The contract of January 18 should be construed in the light of the admissions in the contract of June 12, and the fact that the money realized from the land after January 18 was equally divided between the two firms. Wharton on Contracts, sec. 653; Wharton on Evidence, sec. 941; *Patterson v. Camden*, 25 Mo. 22; *Goldman v. Wolff*, 6 Mo. App. 495. (3) This being an equity case, this court should cause to be entered the proper decree, giving to plaintiff an undivided one eighth of the land described in the petition. (4) The court having expressly found in its decree that the preponderance of the testimony showed that plaintiff's grantor was to have one eighth of the land, it should under the other practically undisputed facts have found for the plaintiff.

*John A. Blevins* for respondents.

(1) The evidence abundantly sustains the finding of the court. (2) Under the contract between the two firms dated January 18, 1888, the firm of Caldwell, Felt & Company were entitled to only one half of the profits in excess of $10,000. (3) This contract may be explained by the contemporaneous facts and the subsequent acts and conduct of the parties as well as parol evidence. *First*. The profits made by the two firms after taking out $10,000 for Arnold, Neilson, and Davidson, were equally divided between them. All the parties accepted and acted upon this construction of the contract, and they can not now repudiate it. The acts and conduct of the parties under a contract establish the intent of the parties, and their intention must govern in its construction. *Dentman v. Kilpatrick*, 46 Mo. App. 627; *Sedalia Brewing Co. v. Waterworks*, 34 Mo. App. 50. *Second*. All the facts and the parol evidence show that the Kansas City firm was to have no interest in the

land. (4) The contract with B. P. McNair, dated June 12, 1888, is not admissible in evidence in this case to show title in plaintiff for any other purpose. It was written by Caldwell, of the Kansas City firm, and as far as plaintiff is concerned it is a mere gratuity and a self-serving statement. At most, it is only an admission and is fully explained by the parol evidence. (5) The decree of the court was for the right party and it was unnecessary to make any finding of facts or give any reasons for so finding. *Jordan v. Buschmeyer*, 97 Mo. 96.

ROBINSON, J.—This is a suit in equity instituted by plaintiff, as assignee, for an undivided one eighth interest in one hundred and seventy-one acres of land in Morgan county, Missouri, involving the construction of a contract hereinafter to be set out in full.

On January 18, 1888, a real estate firm in Morgan county, composed of J. D. Neilson, Albert F. Davidson, and Anthony Arnold, entered into a contract with the firm of Caldwell, Felt, Kittle & Bridges, of Kansas City, for the sale, disposition of, and acquiring of certain lands therein named, and for other purposes, set out in the contract, which reads as follows:

"Memorandum of agreement entered into on the eighteenth day of January, 1888, by and between the firms of Neilson, Davidson & Company, located at Versailles, Missouri, composed of J. D. Neilson, Albert F. Davidson, and Anthony Arnold, and the firm of Caldwell, Felt & Company, located at Kansas City, Kansas, composed of Joseph T. Caldwell, Frank W. Felt, Josiah W. Kittle, and Samuel G. Bridges, witnesseth: That whereas, the said firms above named are about to *negotiate the sale of one hundred and seventy-one acres of land in sections 5 and 6, township 41, range 16, in Morgan county, Missouri*, and to take options to

purchase or lease other coal lands in the locality of said one hundred and seventy-one acre tract, or to sell interest therein, and retain certain interests in said land, leases, or options; it is therefore mutually agreed between the firms aforesaid, *that the profits realized from the sale of said one hundred and seventy-one acre tract, or any. interest therein,* or the sale of any options and leases on other coal lands, *shall be equally divided between the said firms, that is, the said Neilson, Davidson & Company,* the one half, and the said *Caldwell, Felt & Company,* the other half thereof; also any interest purchased in any of said lands by the said Caldwell and Felt, and any interest retained in any of said lands, options, or leases, by the said Neilson, Davidson & Company, shall be the joint property of the firms aforesaid, *i. e.,* the one half thereof to be the property of Neilson, Davidson & Company, and the other half the property of Caldwell, Felt & Company.

"Witness our hands and seals on the eighteenth day of January, 1888.

"JOHN D. NEILSON,
"A. F. DAVIDSON,
"ANTHONY ARNOLD,
"J. T. CALDWELL,
"FRANK W. FELT,
"JOSIAH W. KITTLE,
"SAMUEL G. BRIDGES."

Plaintiff claims that he, as assignee of his grantor Bridges, is entitled to an undivided one eighth interest in and to the one hundred and seventy-one acres of land named in said contract, and brings this suit against all of the first named copartnership, and joins with them, for reasons not. disclosed in the record before us, as defendants, the assignees of the last named copartnership, except the Samuel G. Bridges under whom he claims.

Defendants claim that upon the face of the contract above set out, neither plaintiff nor his grantor Bridges had any right to or interest in the land in controversy. That plaintiff's grantor Bridges was only (as one member of the firm of Caldwell, Felt & Company) interested in what was realized by way of profit from the sale of the one hundred and seventy-one acre tract, over and above the original agreed cost of the land to them.

The trial court gave judgment for the defendants, and recited therein that "a preponderance of the evidence offered tended to show that the firm of Caldwell, Felt & Company were to have one half interest of the profits realized from the sale of the one hundred and seventy-one acre tract, and a half interest in whatever part of the land that might be retained by the firm of Neilson, Davidson & Company," but further found and recited "that it is not material to the issue in the cause to consider what construction was placed upon the contract by the parties to it, for the reason that there is not sufficient ambiguity in the terms thereof to make it necessary," and then proceeded in construing the contract to render judgment for defendant as above indicated.

The substantial facts of the case are practically undisputed, when all the testimony is read in connection. The only apparent conflict therein grew out of the court's permission of the parties to the contract to give their interpretation of its meaning, instead of permitting them to show only how each party had interpreted it, by his or their previous action, conduct, or expression, all of which testimony, however, was not considered by the trial court afterward in making up its judgment, as recited therein.

The facts are, that, in pursuance of the above contract, the Kansas City firm induced parties of their city

to visit Morgan county to look at this one hundred and seventy-one acre tract of coal land, and while there they were induced by the parties to the above contract to take an option from them for this land at $60,000. Twelve thousand dollars was to be paid in cash under that contract, and the balance to be paid in the future, when deed was to be made and delivered.

Out of the $12,000 paid by the Kansas City purchasers on their option, to the two real estate firms, $10,000 of it was left with Mr. Arnold, of the firm of Neilson, Davidson & Company, to pay a Mr. Stover, the supposed purchase price for the land under the contract with Arnold of December 26, 1887, and the remaining $2,000, after paying $800 on an option for lands in Miller county held by the two firms, was divided equally between them. The Kansas City purchasers refused to pay further on the land and their option was forfeited.

Up to the time the $12,000 was paid by the Kansas City parties, who took the option for the purchaser of the land in controversy from the two real estate firms, in pursuance of the contract above entered into between themselves for the sale of this land, it was not known by the firm of Caldwell, Felt & Company but that the land was to cost the two real estate firms $10,000. It was then ascertained that Mr. Arnold, of the firm of Neilson, Davidson & Company, had agreed to pay Mr. Stover, the owner of the land, only $7,500 for it. That on December 26, 1887, he had secured the option from Mr. Stover to sell the land for $7,500 and that in obedience to the contract then entered into between Mr. Arnold and Mr. Stover a deed was to be made out in the name of Arnold and placed in the bank of Versailles, to be turned over to Arnold at any time within sixty days that $7,500 should be paid to his credit by the said Arnold. The firm of Caldwell, Felt & Com-

pany claimed no interest in the $2,500, the difference between what they understood and had been told the land was to cost and what in fact was paid for it by Arnold, out of the $10,000 received by him, for the purpose of paying Stover.

As that was the amount their firm understood and was told by Mr. Arnold was to be paid to Mr. Stover for the land at the time they entered into the agreement and contract with the firm of Neilson, Davidson & Company above set out, plaintiff would not now ask to share in the profits from the sale of the land only as same was made over and above the sum of $10,000, although Mr. Caldwell testified, and his statement is practically unchallenged that, "it was agreed between Caldwell, Felt & Company and Nielson, Davidson & Company that the deed from Stover should be made to Arnold, to hold the land in trust for both firms; each firm to have a half interest in the land. When Arnold and I were returning from the coal bed, he said that he could get the deed at once, and get sixty days' time on it and have the deed placed in a bank at Versailles. He went over and got the deed, and the deed was placed in the bank and he wrote me after I went home that everything was all right. * * * I don't recollect the date of the deed. The deed was made before the contract was signed, but we had a verbal contract before that. * * * Before we entered into this written contract it was agreed that Arnold was to hold the land in trust for the two companies. * * * Arnold and I talked it over; that was our agreement. They were verbal." Mr. Davidson, one of the defendants, does, however, say that such was not his understanding of the affairs, but neither he nor Arnold deny in the least the statement as to the agreement, as detailed by Caldwell.

When asked about the Stover deed, Davidson said: "It was made December 26, 1887.

"*Q*. Was it an option then? *A*. No, sir; it was a deed in escrow.

"*Q*. What was the consideration—did you have any money to pay for it? *A*. No, sir.

"*Q*. How did you expect to get the money to pay for it? *A*. That was a matter of consideration with ourselves."

After the refusal of the Kansas City purchasers to pay any further part of the $60,000 than the $12,000 paid on the day of the making of the option contract above named, and had announced their intention to let their option and all that they had paid be forfeited, the two firms of Neilson, Davidson & Company and Caldwell, Felt & Company entered into another contract, on June 12 following, for the sale of this land to one B. P. McNair, and in that contract the respective interests and rights of the two firms, in this property, were set out fully, as if to put at rest forever all possible controversy as to what rights and interest each firm was to have in and to this land, and the profits arising therefrom, if the contract of January 18 aforesaid could be said to need independent and outside aid in arriving at its true meaning.

The following is the contract of June 12:

"Whereas, Anthony Arnold holds the title to the land hereinafter described, in trust, for himself, A. F. Davidson, J. D. Neilson, and the firm of Caldwell, Felt & Company, the interest of said parties being as follows: Anthony Arnold, A. F. Davidson, and J. D. Neilson each an undivided one sixth interest therein, and the firm of Caldwell, Felt & Company, an undivided one half interest therein, now therefore, it is hereby agreed by and between the above said parties of the first part and B. P. McNair of the second part,

that the said parties of the first part contract and agree to convey to the said party of the second part the following described real estate situated in Morgan county, Missouri, to wit:   (here follows description of the one hundred and seventy-one acres heretofore referred to) upon the following terms and conditions, to wit.'' (The other terms of this contract are not material to this case.)

This contract was dated June 12, 1888, and signed,

"ANTHONY ARNOLD,
"A. F. DAVIDSON,
"JOHN D. NEILSON,
"CALDWELL, FELT & CO.,
"B. P. McNAIR.''

This contract was read in evidence by plaintiff to sustain his contention as to the meaning of the contract of January 18, the then interpretation by the parties in interest, but, as before remarked, was wholly ignored by the trial court in arriving at its judgment, for the reasons therein expressed, ''there is not sufficient ambiguity in the terms of the contract of January 18 on which the suit is based to make it necessary.''

It might be well here to state that under this contract McNair paid $2,500, and failing to pay the balance due thereon, forfeited his $2,500 and all right to claim a deed to the land, and so announced his intention, and the money then paid by him was divided among the members of the two firms according to their respective claims and interest, as expressed in the contract of both January 18 and June 12; and plaintiff now asks to have this court decree to him an undivided one eighth interest in and to the one hundred and seventy-one acres of land (as the assignee of his grantor, Bridges, one of the firm of Caldwell, Felt & Company) held in trust by the defendant Arnold, for himself, and the codefendants of said

Arnold, since his rights have been denied by the construction placed upon the contract of January 18 by the trial court,

We, like the trial court, think it not absolutely necessary in construing the contract of January 18 to call to our aid the interpretation placed upon it by the parties thereto as expressed in the contract of June 12 to ascertain the meaning thereof, but, unlike the trial court, we do not interpret the contract, as regards plaintiff's right to the lands in controversy, in direct opposition to the interpretation that all the parties to this suit, then having an interest in the contract, placed upon it when the contract of June 12 was made, but adopt that interpretation as the one in complete harmony with the correct legal interpretation of the terms of the contract of January 18, on which plaintiff has bottomed his right to recover in this action.

Under the clause of the contract "it is therefore mutually agreed between the firms aforesaid that the profits realized from the sale of said one hundred and seventy-one acre tract   *   *   *   shall be equally divided between the said firms," upon which alone the trial court based its judgment, and the one on which respondents alone here seek to defeat plaintiff's claim to an interest in the land (asserting that his assignor, Bridges, as a member of the firm of Caldwell, Felt & Company, were only entitled to an interest in the money profit realized by the two option sales over and above the $10,000 paid by them for the land), we think plaintiff clearly has a right to maintain this action for his one eighth interest in the land, without considering now a subsequent part of the contract that is equally as conclusive of plaintiff's rights, which will be noticed further on in this opinion, and without considering the contract of June 12, wherein the parties themselves placed their own construction upon the contract of Jan-

uary 18, as same affects the respective right and interest of all parties concerned in and to the land.

Under the facts of this case the term "profits realized from the sale of said one hundred and seventy-one acre tract" as used in the contract of January 18, means more than the mere money difference between what the two firms received from the two option contracts made with McNair and the first Kansas City parties with whom they contracted, and the sum that was to be paid Stover for the land. Here, by reason of the fact that the parties to this contract had received from the Kansas City parties, with whom they were negotiating a sale of this land, money sufficient, and more than was necessary, for them to pay to Stover (the then owner of the land) from whom Arnold had previously taken the option for the benefit of the two firms, and same had been paid to him, and the title to the land taken in the name of Arnold, for the use and benefit of the two firms, to consummate this deal with the Kansas City parties on receipt of an additional $48,000, and as Arnold was not required to convey the land to the Kansas City parties, as was contemplated under the option contract of the two firms with them on account of their after conduct in refusing to pay the remaining $48,000 due the two firms, and as the title was thus left in Arnold's name, it stood as and for the additional profit of $48,-000 which the two firms would have made on the deal had the Kansas City parties not refused to carry out this contract with the two firms.

The one hundred and seventy-one acre tract itself, under the circumstances, may justly be said to be a part of the profits resulting from, accruing to, and growing out of the joint efforts of the two firms to negotiate a sale thereof, as contemplated in the contract of January 18; and the fact that Arnold was not called upon to convey the property to the Kansas City purchasers, or

anyone else, as it was contemplated he should do, can not affect the right thereto of any party in interest.

The joint effort of the two firms resulted in raising $12,000 in cash, out of which the original owner of the land was paid all that he asked for it. By the joint influence, persuasion, scheming, or by whatever name their efforts may be characterized, parties were induced to agree to pay $60,000 to the two firms for this land, $12,000 of which was actually paid to the combination firm, and the land was paid for with part of the cash thus realized, and the title thereto taken in the name of Arnold, to enable the two firms to carry out their agreement to convey the land to the parties with whom they had been negotiating when the remaining $48,000 was paid to them. In fact, by the joint result of the effort of the two firms, they got not only the profit represented by the differences paid out on the land, and the amount received over and above that sum, but got in addition the land itself as a part of the profit resulting to them from the attempted negotiation and sale thereof under their mutual contract of January 18.

The profits realized from the sale of this land, as regards the members of the firm of Caldwell, Felt & Company, under the contract of January 18, would not be affected by any view the court might take of the contract of December 26, 1887, between Stover and Arnold regarding the land.

If it should be found that Arnold made the contract for the deed to the land in his name in the first instance, for the benefit of the two firms, and they paid for it out of money which they received by their joint effort, then it must remain the joint property of the two firms, and plaintiff would be entitled to the interest of Bridges, as one member of the combination firms.

Or if we say that Arnold made a contract with Stover for the land for himself, or for himself and his copartners, Neilson & Davidson, and Stover made a deed out in the name of Arnold alone, and placed it in the bank at Versailles in escrow, to be delivered on the receipt of $7,500 any time within sixty days, and Arnold, of the firm of Neilson, Davidson & Company, did sign with his firm and the firm of Caldwell, Felt & Company the contract of January 18, to join with them in the negotiation for its sale or resale, and agree to divide equally the profits between the two firms made from the sale, the profits would still be represented by all that the combination got or were entitled to get out of the transaction over and above the price paid the owner of the land, whether it be Stover or Arnold, that was necessary and required of the firm to make good their contract to convey the land to the parties with whom they were negotiating the sale. This the combination did, out of the first $12,000 received by them on their contract with the Kansas City purchasers.

When the $12,000 was paid to the combination firms on their deal with the Kansas City parties, that money belonged to them, and when $10,000 of it was given up to be applied on the purchase price of this one hundred and seventy-one acre tract, it certainly could not be said to have been done for the benefit alone of Arnold, or for his firm, but for the benefit of the combination firms, the owners of the money; and if the title to the lands was then, in consideration of that payment, placed in the name of Arnold, he would hold it for the benefit of the two firms, and could not appropriate it to his own use, or to the use of himself and copartners, Neilson and Davidson, as he now seeks to do. And this would be true even though it be conceded that the contract pre-

viously made for the land with Stover of December 26, was made for himself or for himself and copartners, Neilson, Davidson & Company, and not for the benefit of the combination firms, as Mr. Caldwell swears most emphatically was done, and in which he is disputed by no one unless Davidson's testimony as to his understanding of the terms of the contract between Stover and Arnold may be called testimony, in the absence of a word from him as to the terms of the contract, or what was said between the parties about it.

Each firm contributed and brought to the undertaking, contemplated in the contract of January 18, the same amount and character of capital, so far as the testimony discloses, to wit, ability as real estate dealers to persuade some eager speculator or some one seeking a profitable investment that the land in controversy, for which the owner then only asked $7,500 (if we consider Stover as owner, or $10,000, if we call Arnold the owner) was worth in fact $60,000, or such other sum as they should agree upon to ask over and above the amount demanded by the owner of the land before he would make to this contracting purchaser, or themselves, or to one of their number for the use of the combination, a deed to the land. Each firm under the contract is entitled to one half of the "acquisitions beyond expenditures," which Webster defines as "profit," and that certainly represents the land as well as the money obtained by the firm from their various deals under the circumstances of this case.

Out of the contemplated venture of January 18, the combination firms got $4,500 in money and a deed to the one hundred and seventy-one acre tract of land, over and above what they received from their deals and the amount paid out on the land. The money has properly been divided, if the doubtful appropriation of $2,500 by Neilson, Davidson & Company (the differ-

ence between the real price paid for the land, and the price that the firm of Neilson, Davidson & Company represented to Caldwell, Felt & Company was to be paid for it) is ignored.

We think the one hundred and seventy-one acre tract held in the name of defendant Arnold under the contract sued upon should have been divided equally between the two firms, and that plaintiff as assignee of Bridges, is entitled now to the undivided one eighth interest in same, and it will be so ordered.

But, say the respondents, Arnold owned the land at the time of the making of the contract of January 18, by virtue of his contract with Stover of December 26, and he has never contracted it away to the two firms or anyone else.

If we treat him as the owner of the land, he, by the contract of January 18 (signed in connection with his copartners), supplemented by his statement to the firm of Caldwell, Felt & Company that the land was to cost $10,000, and his after retention of that sum (from the first $12,000 received by the two firms on their first joint deal) to pay on the land, must be held to have sold the land to the firm for that amount to carry out the scheme contemplated in the contract, and if he sold the land it should go to the firm as part of the acquisition of the joint undertaking of the firm under their contract.

Independent of what meaning may be given to the word "profit" as used in the contract of January 18, or what might be included within or comprehended under the terms "profits realized from the sale of said one hundred and seventy-one acre tract," the interest of plaintiff in the land is fixed unmistakably in the light of the facts of this case, by the latter part of the contract that provides that "any interests retained in

Vol. 134 mo—14

any of said lands, option, or lease, by the said Neilson, Davidson & Company shall be the joint property aforesaid, i. e., the one half thereof to be the property of Neilson, Davidson & Company and the other half the property of Caldwell, Felt & Company."

This land, according to all the testimony, came to Arnold as the result of money realized under and growing out of the contract of January 18, and defendants admit and claim that he is holding and now retains it for the firm of Neilson, Davidson & Company, of which he is a member, so that it may be said to be lands in which the firm of Neilson, Davidson & Company have retained an interest, which, under the letter as well as the spirit of the contract, was to be the joint property of the two firms.

Why the trial court, after reciting in its judgment "that the preponderance of the evidence tended to show that the firm of Caldwell, Felt & Company were to have a one half interest in the profit realized from the sale of said lands that might be retained by the firm of Neilson, Davidson & Company," should proceed with its judgment and find against plaintiff, with the further finding "that it is not material to the issue in the cause to consider what construction was placed upon the contract by the parties to it, for the reason that there is no sufficient ambiguity in the terms of the contract to make it necessary," I can not understand.

Certainly the contract can not be construed to be so positive in its terms as to exclude the idea that Caldwell, Felt & Company were entitled to a one half interest in whatever part of the lands that might be retained by the firm of Neilson, Davidson & Company in their operations with the firm of Caldwell, Felt & Company under the 'contract of January 18.

If not, and the parties to that contract have after its making construed it themselves, and given to it a

meaning and interpretation, the courts should carry out that interpretation, in order to reach the real intention that animated the parties and inspired the contract, and put in force the intention of the contracting parties where the language used in the contract is not repugnant to the declared or ascertained construction by the parties afterward. The chief object of courts at all times should be to get at the intention of the parties to a contract where rights under it are involved, if it can be done without doing violence to the language used therein, or where it is not wholly at variance with the correct legal interpretation of the terms employed, which clearly can not be said of the contract sued on in this case.

We think the plaintiff as assignee of Bridges, one of the firm of Caldwell, Felt & Company, by reason of the express language of the contract of January 18 itself, as well as by the after construction put upon it by all the parties in interest, in the contract of June 12, is entitled to an interest in the land sued for, and for that reason will reverse the judgment of the trial court and now order that judgment be entered in that court, divesting title out of defendant Arnold to an undivided one eighth of said one hundred and seventy-one acre tract named in plaintiff's petition and that title thereto for said interest be invested in plaintiff. MAC-FARLANE, J., concurs. BRACE, C. J., and BARCLAY, J., concur in the result.