M. B. COLEMAN et al., Respondents, v. FORD MOTOR CO., Appellant.

Kansas City Court of Appeals, January 29, 1917.

1. **AGENCY: Deposit as Security: Forfeiture: Contracts: Termination: Sale of Patented Article.** A retail dealer had a contract with the manufacturer of a patented article to sell only in a certain territory, and had made a deposit with the manufacturer to secure compliance with such restriction, and was to forfeit the deposit if that provision was violated either during the continuation of the contract or after its termination. The contract provided that it could be terminated at any time by either party. After the contract of agency was terminated the dealer sold one of the patented articles, which he had received under the agency, outside of the territory. *Held,* that the contract providing for forfeiture for violation of restriction after the termination of said contract is valid.

2. ———: ———: ———: ———: ———: ———. The subject-matter
with which the contract dealt was the right to sell a patented arti-
cle which right is in the hands of the patentee during the life of
the patent. So that the right of the retail dealer to sell wherever
he chose was not the same right which he would have to sell any
other ordinary chattel which he had bought and paid for.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*,
Judge.

REVERSED AND REMANDED (*with directions*).

*Scarritt, Scarritt, Jones & Miller* and *L. B. Robert-
son* for appellant.

*Frank M. Lowe* for respondents.

TRIMBLE, J.—Coleman Brothers, the plaintiffs,
were engaged in business at Sedalia and dealt in auto-
mobiles. On March 12, 1913, they entered into a written
contract with the defendant, the Ford Motor Company,
whereby they obtained the restricted right to sell, with-
in a certain designated territory surrounding Sedalia,
automobiles manufactured by defendant. The defendant
agreed, subject to the terms and conditions of the con-
tract, to sell its said machines to plaintiffs in said ter-
ritory, to be sold and delivered by them therein only.

As a guarantee of the full and faithful performance
of all the terms and conditions of the contract, the plain-
tiffs deposited with the defendant the sum of $250: In
said contract the plaintiffs were called "The Dealer-
Licensee" and the defendant was termed "The Manu-
facturer-Licensor." And said contract contained a pro-
vision that "if the Dealer-Licensee shall sell or deliver
or cause to be sold or delivered any of The Manufac-
turer-Licensor's automobiles to any person or persons
residing outside the territory licensed in this agree-
ment. The Manufacturer-Licensor shall have the right
and privilege to immediately terminate this agreement
and The Dealer Licensee agrees to forfeit to The Man-
ufacturer-Licensor the contract deposit made with this

agreement. . . . It being agreed and understood that such sales shall be construed as a violation of the spirit of this license-agreement and an infringement of the Ford patents and the rights granted to other Dealer-Licensees and Sub-Dealer-Licensees who are thus affected by Dealer-Licensees selling or disposing of Ford automobiles in outside territory licensed to other Dealer-Licensees or Sub-Dealer-Licensees.''

The contract was to expire by limitation on September 30, 1913, but a provision therein authorized its termination at the will of either party at any time upon giving notice to the other party. It was further provided that:

''All sales made by the Dealer-Licensee after such termination of this license-agreement shall be governed by the terms and conditions thereof,'' and that ''in case the Dealer-Licensee has any Ford cars still on hand the sale thereof shall be subject to the terms of this license-agreement and any violation of the terms of sale shall constitute a violation of this license-agreement under said patents.''

On April 30, 1913, the defendant exercised the right of termination existing in either party, and terminated the contract by giving the required notice.

The contract also provided that at the end of each week plaintiffs should make a report of all Ford automobiles sold by them under the agreement, giving car and motor numbers, date of sale, and name and address of each purchaser. And on May 14, 1913, defendant requested of plaintiffs a report of certain cars sold and delivered to plaintiffs. In due time said report was received from them in which they stated that car No. 195,292 had been sold to A. M. Parks of Sedalia, Mo. Defendant refusing to surrender the $250 deposit, plaintiffs brought this suit to recover said deposit.

A jury was waived and the cause was tried by the court. It was proved, and the court so found, that said car No. 195,292 was sold on May 2, 1913, to C. L. Parks outside of plaintiffs' allotted territory and not, as stated by said report, to A. M. Parks in said territory.

By the giving of declaration No. 5 and the refusal of declaration No. 6, the court declared the law to be that if the sale of said automobile outside of the specified territory had been made *before* April 30, 1913, the date the contract was terminated, then plaintiffs would have forfeited the $250 deposit, but that as the sale was made *after* the termination of the contract, it was not forfeited; and, therefore, judgment was rendered for plaintiffs for the amount of the deposit together with costs. The defendant has appealed.

Under the contract, either party had a perfect right to terminate it at will at any time, and consequently the defendant's termination thereof on April 30, 1913, was not wrongful but in strict accord with the contract. Now, said contract not only contained terms and conditions regulating the sale of Ford automobiles *during the continuation* of the contract, but said contract also provided that *after its termination,* whether at the will of either party or for cause, the *sale of such automobiles as plaintiffs had obtained under the contract* and which were yet on hand, should be *"governed by the terms and conditions thereof"* and should be *"subject to the terms of this license-agreement* and any violation of the terms of sale shall constitute a violation of this license-agreement under said patents.'' One of the conditions under which plaintiffs bought defendant's patented machines was that they would not sell them outside of a specified territory, and plaintiffs agreed that if they did sell them outside of that territory they would forfeit the deposit. They further agreed that if the contract should be terminated in any of the ways specified therein, the sale of such automobiles as were then on hand, and not yet sold, should continue to be governed by the same terms and conditions as before. In other words, as the contract was at any time terminable by either party at will, the agreement provided for the restricted sale of such cars as plaintiffs had on hand after such termination; that is, the parties agreed that although the contract be terminated, so that plaintiffs would not have the right *thereafter* to get defendant's machines, yet, as to ma-

chines *theretofore* obtained and not yet sold, the contract would *continue* in force. And plaintiffs would have no more right to sell a car outside the specified territory, after the termination of the contract, than they did before. We see no reason why a contract may not thus provide for the termination of the general relations existing between the parties by reason of it, and at the same time provide for the continuation of certain rights as to things obtained under but not as yet disposed of according to the contract. In other cases the principle seems to be well established that parties to a contract may provide therein for their respective rights and liabilities in the event of the termination thereof. [Hayes v. City of Nashville, 80 Fed. 641; McCreery v. Day, 119 N. Y. 1; Schwab v. Baremore, 95 Minn. 295; Alabama Oil Co. v. Sun Company, 99 Tex. 606; Mayor etc. of New York v. New York Refrigerating etc. Co., 146 N. Y. 210.] The fact that the defendant terminated the contract makes no difference, since it had a right to terminate and plaintiffs agreed to the contract with that right in it, and also agreed that if that right were exercised they would sell the cars still on hand subject to the terms and conditions of the contract.

There is nothing unreasonable or objectionable in such a contract. The defendant is the holder of patents from the government granting it the *exclusive* right to make and sell its machines. The contract in this case is one that affects its *right to sell* its manufactured patented product. It is true, it agreed to sell, and did sell, the machines to plaintiffs but the price plaintiffs paid was not all the consideration defendant received. A part of that consideration was that plaintiffs would not sell outside their territory and thus encroach upon the territory of other dealers to whom defendant had granted a similar restricted right to sell. This stipulation confining each dealer to his allotted territory is not a jug-handled affair—all on one side. It is to the benefit of both the manufacturer-patentee and the dealer. By the contracts made with the dealers in the territory adjoining plaintiffs' territory, defendant could and did

prevent those dealers from encroaching on plaintiffs' territory, and thus it was to the advantage of each dealer that he agreed to be confined to his allotted territory. By these contracts the defendant had divided the selling territory of the entire country into districts of proper size and convenience for the attention and operation of local dealers. And the subject-matter with which the contract dealt was the right to sell a *patented* article, the contract of the sale of which is in the hands of the patentee during the life of the patent. So that the right of plaintiffs to sell wherever they chose was not the same right which they would have to sell any other ordinary chattel which they had bought and paid for.

If the restriction as to place of sale was in force only while the contract was in *full effect in every way,* and, notwithstanding the provision that such restriction and, notwithstanding the provision that such restriction *tion* of the general relation, the plaintiffs had the right to sell anywhere they chose, then defendant could not effectively grant a restricted right to sell its patented article. For the plaintiffs had the same right to terminate the contract at will that the defendant did. They could, therefore, purchase a hundred cars and then terminate the contract and sell wherever they chose, and defendant would be powerless to prevent them. The U. S. Supreme Court in Henry v. Dick Company, 224 U. S. 1, 27, says the exclusive right granted to a patentee is to subserve a broad public policy by which large ends are to be attained; that it is a reward for inventive genius and intended as a stimulation thereof; that the right extends not only to that of making but also to the right of selling and these are "separable and substantial rights." Now the contract in the case at bar is one granting the restricted right to sell defendant's manufactured patented article. And if plaintiffs can violate the terms of that contract, regulating sales of machines obtained under the contract, by merely postponing the violation until after the contract in general has been terminated, notwithstanding the provision that as to

such machines so obtained the restriction as to sale shall remain the same as before termination, then defendant's right to control the right of sale of its patented article, granted to it by the Federal laws, is taken away. The petition pleads the contract and, on its face, shows that the contract is one granting the restricted right of sale of a patented article, the patents for which are held by defendant. Such contracts are valid. [Standard Fire Proofing Co. v. St. Louis Expanded etc. Co., 177 Mo. 559.] And are not in restraint of trade. [Fowle v. Park, 131 U. S. 88; Cole Motor Car Co. v. Hurst, 228 Fed. 280.]

The case of Ford Motor Co. v. Union Motor Sales Co., 225 Fed. 373, decided by the United States District Court for the Southern District of Ohio, and cited by plaintiffs in support of their theory, is not deemed applicable to the case at bar. That was an injunction to restrain the defendants therein from representing that they could obtain Ford cars for sale at prices less than the manufacturer-patentee's list price and from conducting any business in Ford automobiles. The suit was not against any party to the contracts (which were similar to the contract in the case at bar), but was against defendants who had *purchased cars from dealers* who were parties to such contracts. The defendants therein not being parties to the contracts, the complainant sought to hold them liable on the ground that, as the dealers got the automobiles on a conditional contract of sale, which recited that if the cars were sold below price no title would pass, therefore no title to cars bought by the defendants therein *from such dealers* would pass to or vest in defendants, and hence they could not legally convey title to any car that they might resell and for that reason they ought to be restrained from representing that they could. The court, however, held that as the Ford Motor Company had received the price it asked of the dealers for the cars, the title passed, and that, since the title had passed to the dealers, it also passed to defendants who had bought the cars from such dealers. But in the case at bar there is no contention but that the title

to the car plaintiffs sold to Parks passed to and vested in him. Defendant is not seeking to destroy that sale, but is merely insisting that plaintiffs suffer the penalty they agreed to suffer for the violation of their contract in making such sale. The court in the Union Motor Sales Co. case, supra, does say that the patent law does not confer upon a patentee power to prevent competition among those who have purchased the article from him, but that remark must be construed as applying solely to the facts of that case in which the parties sought to be held were not direct contractual parties to the patentee's contract and, therefore, had not agreed to its terms and penalties. The court expressly says the opinion is "restrained to the facts in this case." The same is true of the "Sanatogen case" (Bauer & Cie v. O'Donnell, 229 U. S. 1), the case on which the Union Motor Sales Co. case is based. O'Donnell was a druggist in Washington. Bauer & Cie, under the name of The Bauer Chemical Co., held a contract from the owners of a U. S. Patent on "Sanatogen" which contract gave them the power to fix the price of sale to wholesalers or distributors, retailers and the public. The price was fixed at $1 per bottle. O'Donnell purchased of the Bauer Chemical Co. original packages of Sanatogen which he retailed for less than $1 per bottle and the Bauer Chemical Company severed relations with him. Thereupon he went to jobbers, who had theretofore purchased from said Chemical Company its product, and bought Sanatogen from them and sold it for less than $1 per bottle and was threatening to continue to do so. The Supreme Court say (p. 17): "the appellee and the jobbers from whom he purchased were neither the agents nor the licensees of the patentee." And that the vast results and public interest "admonish us to proceed with care and to decide in each case no more than what is directly in issue." Holding that the grantee in a contract with a patentee could not, by a mere notice pasted on the patented article, regulate *all sales in the future,* no matter into whose hands they might come, is a far different thing from holding that if a patentee makes a contract giving the other party

195 M. A.—36

the right to sell the patented article in a specified territory only and provides therein that if the agreement as to restricted territory is violated, the violator shall suffer a forfeit as a penalty, such provision as to restricted territory and penalty is unenforcible. We do not think such a principle can be deduced from either of the Federal decisions above cited. And if such provision is valid, then there would appear to be no reason why the further provision in the contract, that sales of machines remaining on hand at the termination of the contract should be disposed of by the dealer on the same terms and conditions and subject to the same regulations as were in force prior to the termination, should not be held valid. Both provisions are necessary for the protection of the patentee and so that it may be better enabled to obtain dealers who will agree to sell the patented article; and they also protect said dealers after they have entered into said contracts and agreed to sell the patented article.

It is evident, too, that the plaintiffs recognized that the contract continued in force as to the unsold cars although the contract in its general scope was terminated, for, after it was terminated, they sent in a report of cars sold, as they had theretofore done under the contract; and in this report the particular car in question was reported to have been sold to an individual stated to be residing in the proper territory, when the facts were that it had been sold to a different individual residing outside the territory. Ordinarily, unless there is some rule of law positively forbidding it or precluding its adoption, the courts will follow the interpretation placed upon the contract by the parties themselves as shown by their acts and conduct. [Carter v. Arnold, 134 Mo. 195, 210; Kaster & Sons Adv. Co. v. Elders, 170 Mo. App. 490; St. Joseph Union Depot Co. v. Chicago, etc., R. Co., 131 Mo. 291, 305.

The statement in the defendant's letter of May 14, 1913, that upon the return of a report from plaintiffs as to each car recently delivered to them, the deposit would be returned, and that defendant was ready to return the

deposit and asking for the necessary information on the report without delay, was not a recognition that they had no right to hold the deposit after the terminaton of the contract. It merely assumed that plaintiffs would not violate the contract by selling outside their territory and had not done so. The report of the sale to Parks was made to defendant after this and the knowledge that this sale was outside the territory presumably came to the defendant after said letter was written. There is no evidence that the violation was known at the time the letter was written.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for defendant. All concur.