# Staunton

## HENRY L. GEISLER v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

*John T. DeHart, A. G. Lively* and *Clarence C. Burns,* for the plaintiff in error.

*B. S. Gore, Robert L. Pennington* and *William A. Stuart,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Henry L. Geisler instituted this action to recover $2,433 alleged to be due him under the terms of a written contract with defendant, The Equitable Life Assurance Society of the United States. Defendant pleaded the general issue, and later demurred to the evidence. To the judgment sustaining the demurrer, plaintiff obtained this writ of error.

Two questions are presented: One is whether the grounds of demurrer are stated with reasonable certainty, as required by provisions of Code, section 6117; the other is, under the rules by which the court is governed in considering a demurrer to the evidence, did the jury have a right, on the evidence introduced, to find a verdict for the plaintiff?

The questions will be discussed in the inverse order stated. The material evidence is uncontradicted, and is as follows: The contract signed by the parties, and upon which each relies, bears date February 5, 1923. Under the terms of this contract, plaintiff was employed to procure applica-

tions for insurance contracts for defendant in certain parts of Tennessee and Virginia. The pertinent provisons of the contract are:

"3. The agent shall be allowed the following commissions on premiums as paid in cash to the Society, on policies issued under this contract:

   \*      \*      \*      \*      \*      \*      \*

| | FIRST YEAR | "RENEWALS 2nd to 10th year inclusive as—per clause 4 Per Cent |
|---|---|---|
| ORDINARY LIFE | 50 | 5 |
| 30 years | 50 | 5 |
| 25 years | 50 | 5 |
| LIMITED PAYMENT LIFE 20 years | 50 | 5 |
| 15 years | 45 | 5 |
| 10 years | 35 | 5 |
| 50 years     45 years | 50 | 5 |
| 40 years     35 years | 45 | 5 |
| 30 years | 40 | 5 |
| ENDOWMENT 25 years | 35 | 55 |
| 20 years | 30 | 5 |
| 20 years paid up in 10 | 25 | 3 |
| 15 years | 25 | 3 |
| 10 years | 20 | 3 |
| Term | 15 | 5 |
| Convertible Income Bond | | |
| (Yearly premium 10 yrs. or longer) | 30 | 5 |
| (Yearly premium less than 10 yrs.) | 10 | 3 |
| Children's and Pure Endowments | 10 | 3 |
| Insurance paid up by a single premium | 4 | |

"Regulations:

"10. This contract is subject to the Regulations on the opposite sheet, hereby made a part hereof, as well as to such other rules and regulations as the Society has established or may hereafter establish covering the conduct of its business; and if the agent shall fail to comply with any of the provisions of this contract, or if he shall violate any law in force within the district in which he is doing business, this contract shall be forthwith terminable."

"13. Unless otherwise terminated, this contract may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address, at least seven days before the date therein fixed for such termination."

Among the "Regulations" on the back of the contract of February 5, 1923, is clause (c), which reads as follows:

"Where a policy is issued which, in the judgment of the Society, is to take the place of a terminated policy, the new policy shall be regarded as a 'changed policy' and a special commission adjustment thereon shall be made."

Among the regulations for agents of defendant, made a part of the contract, is found the following provision:

"On policies coming under the provisions of the foregoing rules (in which are included five year term policies), commissions will be allowed as follows:

"11. The agent through whom the new insurance is effected will be allowed regular first year's commissions, less an amount equal to the first year's commissions on the amount of the old premium at the rate authorized for the kind discontinued under his current contract, i. e., the contract under which the commissions are allowed on the new policy, except that if the old policy is a Term policy the rate of first year commission to be deducted on the amount of the old premium will be at the rate actually paid thereon."

Acting under the provisions set forth in paragraph 13, quoted above, defendant terminated the contract as of May 30, 1932. Prior to this date, plaintiff had procured applications for a number of policies, in which the policy holders were given the right, within the five-year period, to convert the term policy into some other form of insurance by making application therefor, and by payment of the difference in premiums between the term policy and the form of insurance selected. Defendant was obligated to convert the term policy into the form of insurance selected by the policy holder without additional medical examination. In some of the applications for the term policies it was stated that if the purchaser of the policy exercised the option to convert

the term policy he could purchase an ordinary life policy. In fact six ordinary life insurance policies were, on application of the holders, and payment of the additional premiums required, issued to the former holders of the term policies, but application for the new policies and payment of the premiums were made, and the policies issued, sometime after the contract between plaintiff and defendant had terminated.

There is no dispute between the parties as to the amount of premiums paid on the converted policies, or the amount of commissions due, if any. The question on the conceded facts is whether plaintiff is entitled to recover anything. He contends that under the terms of the contract bearing date February 5, 1923, the new policies in question, issued after May 30, 1932, but pursuant to a right given the policy holders, entitle him to 50% commissions on the initial premiums, and 5% on all premiums paid thereafter within ten years from the date of the term policies. Hon. W. H. Robertson, the learned trial judge, clearly expresses our view in his written opinion disposing of this contention:

■■ "The language of Geisler's contract of Feb. 5, 1923, is 'Commissions on premiums as paid * * * on policies issued under this contract,' which has the same meaning as * * *.

" 'Commissions on premiums as paid * * * on Policies issued during the life of this contract,' which language necessarily excluded commissions on Premiums on Policies issued after the contract has expired or has been terminated according to its very terms.

"The Policy, whether Term or Converted, must have been issued and the initial premium thereon must have been paid during the agency. The agency having been terminated according to contract before the converted policies were issued, and before the initial premiums thereon were paid, Geisler was not the agent when such converted policies were issued and when the initial premiums thereon were paid, and is not entitled to commissions on the initial or renewal premiums on such converted policies."

The officers of defendant corporation testified, and their testimony is not denied, that after the contract with plaintiff had been terminated, defendant paid the commission on the initial annual premium received by it for the new or converted policies to its agents then in the territory formerly assigned to plaintiff, and 5% on renewals in accord with similar contracts made with successors of plaintiff in the territory designated.

Defendant, after May 30, 1932, paid plaintiff 5%, less 1% collection charge, or 4% on all renewal premiums paid on policies issued under contract prior to May 30, 1932. The 1% was deducted pursuant to the provisions of clause 5 of the contract reading thus: "Collection charge:

"5. In the event of the termination of the agent's service with the Society under written contract, the Society shall have the right to deduct from renewal commissions hereunder 1% of renewal premiums paid on Life and Annuity forms, and one-half percent on Group forms, unless his service was terminated by reason of his death, or, in the judgment of the Society, his physical or mental disability."

Plaintiff contends that defendant had no right to make this deduction because defendant, or some of its agents, "ordered" him to make the collections after May 30, 1932, when premiums were not promptly paid by policy owners. Again we agree with Judge Robertson, who disposes of this contention in his written opinion thus:

"The plaintiff also claims that he is entitled to recover the 1% on premiums deducted from his commissions after his contract was terminated. His contention is that he was called on to perform certain services in connection with these premiums after the termination of the contract; that he was ordered by the Agency Manager to look after the renewals and had to go on and do the work as usual about these premiums, that after May, 1932, he received various letters addressed to him as agent and that as late as Jan. 15, 1936, he was treated as agent as to these renewals.

"The contract of Feb. 5, 1923, as previously shown was terminated May 30, 1932.

"Clause 5 of the contract provided that in event of termination the Society should have the right to deduct from renewal commissions 1% of renewal premiums, etc. Exercising the right given under this written contract executed with all the required formalities and the legal termination thereof in the manner provided in the contracts, the Society has deducted the 1% from the commissions.

"I do not understand, clearly, whether the plaintiff claims this 1% deducted commission by virtue of a new contract, or upon the theory that the Society has waived its right to deduct it, or is estopped from deducting it. Apparently the plaintiff claims it on all three theories.

"If he claims by virtue of a new contract, my opinion is that his claim is untenable. No authority, express or implied, has been shown by which Agency Managers had any right or authority to give any orders in conflict with or setting at naught a written contract formally executed by the duly constituted authorities and officers of the Society. There was no authority in, nor duty upon the Agency Managers to issue any orders, nor any right in, nor obligation upon Geisler to obey any orders of Agency Managers, or any one else, that would deprive the Society of its contractual right to deduct the 1% complained of. So, if the plaintiff claims that the Society has waived its right to deduct the 1% I am of opinion that the claim is untenable. The plaintiff was entitled by his contract to his 4% and by the same contract the Society was entitled, after the legal termination of the contract, to deduct the 1%. After such termination both plaintiff and the Society were interested in the collection of the renewal premiums; the Society because it was entitled to the premiums, and the plaintiff because he was entitled to a 4% commission thereon. If therefore, the 'orders' and letters had come from the highest officials of the Society and direct from the Home Office they still indicated no intention on the part of the Society to waive any of its legal rights and certainly no intention to waive a legal right acquired by contract to which the plaintiff himself was a party. So far as the

'orders' and letters were concerned, they, in themselves, neither created nor renewed any duties or obligations upon the plaintiff. There is nothing in the 'orders' or letters indicating an intention or, even, a desire to deprive the plaintiff of his 4%; and nothing in them to indicate an intention or willingness on the part of the Society to relinquish its right to retain the 1%. The 'orders' and letters, at best, were gratuitous and concerned matters in which both plaintiff and the Society were interested and in no wise enlarged or diminished those respective interests. As far as I can see there is no foundation on which to construct a waiver.

■ "And, so, if the plaintiff bases his claim on an estoppel, my opinion is, likewise, that his claim is untenable. If the Society denied the plaintiff's right to the 4%, there might be some ground for an estoppel. But the Society makes no such denial. The plaintiff knew what his rights were and what the Society's rights were under the contract. There was nothing in the 'orders' or letters to mislead him. If he did anything towards having the policyholders pay their premiums which he would not have done because of his interest in the 4% commission he did it of his own volition and not because of any compulsion, promise or misrepresentation of the Society. For these reasons, and those previously stated, I think there is no basis for an estoppel against the Society as to the 1%. If the plaintiff was misled it was because of his unsound reasoning and not because of anything the Society said or did, or failed to say or do.

■ "Counsel argued this case at great length. Each side has filed extensive briefs quoting copiously from the authorities. For all of this I thank them. I have no dissent from the cases and other authorities cited by either side. But, as I see it, the authorities relied upon by the plaintiff simply do not fit the facts of this case. The decision rests upon the interpretation of the contract of February 5, 1923. The court cannot add to or take from it. It is not ambiguous and means just what it says, no more nor less.

"It provides that the agent, Geisler, shall have commissions on premiums and renewal premiums on policies written under the contract. It creates a right to commissions on renewal premiums on policies written under the contract even though those renewal premiums extend to a time beyond the termination of the contract. It makes no provisions for commissions on premiums or renewal premiums on policies written after the contract, and thereafter after the agency has terminated.

"The plaintiff has no right to the commissions claimed in this action, unless he can show that that right accrued under some other contract than that of February 5, 1923. This he has not shown."

Plaintiff's attorneys in their argument, and in their brief, contend that the evidence is conflicting as to whether or not the contract was actually terminated. This question is put at rest by the testimony of plaintiff himself. When he was recalled as a witness he was asked the following questions, and he gave the following answers:

"Q. Mr. Geisler, you have just heard read, the depositions taken in New York. So far as they knew in that evidence you had not had any license to do any business in Virginia since July 15, 1932. Did you upon that date procure license in Virginia to continue the insurance business?

"A. I secured license with the Mutual Life, they secured them for me, I will say, less than 30 days after my contract was terminated.

"Q. After you got that notice of termination from the Equitable?

"A. That is right."

The other assignment of error is that the demurrer to the evidence was general and did not specifically state the ground upon which it was based as required by Code, section 6117. It is true that the ground of demurrer was not as specifically stated as it might have been. However, it is clear from the record that there was no controverted question of fact to be submitted to the jury. The question before the court was the proper construction of the con-

tract between the parties. It was the duty of the court, without the aid of a jury, to construe the contract, regardless of the procedure by which it was presented. If defendant had not filed a demurrer to the evidence and had made no motion to strike, the court would have been compelled to construe the contract by appropriate instructions to the jury. Regardless of how the question may have been presented to the court, the final result would have been the same.

In *Newberry* v. *Watts*, 116 Va. 730, 732, 82 S. E. 703, the same objection to a demurrer to the evidence now urged was there raised. Judge Buchanan, speaking for the court, said:

"It is true that the demurrer was general, but it clearly appears from the record, and is admitted by both parties in their written arguments, that there was only one controverted question in the case, and that was whether or not the defendant had notice of the assignment of the bond sued on prior to the time he made the payments and acquired the set-offs relied on in his pleas.

"While it is the better practice in all, and indispensably necessary in some, cases to state the grounds of the demurrer, as held in *McMenamin* v. *Southern Ry. Co.*, 115 Va. 822, 80 S. E. 596, it would be sticking in the letter and violating the spirit of the statute where there is only one controverted question in the case, and no other could arise on the demurrer to evidence, to hold that such failure would be ground for reversal. *Bonos* v. *Ferries Co.*, 113 Va. [495] 497, 75 S. E. 126."

For the reasons stated the judgment of the trial court is affirmed.

*Affirmed.*