[Civ. No. 6642. Fourth Dist. Feb. 23, 1962.]

EDWARD W. MERRILL, Plaintiff and Appellant, v. CONTINENTAL ASSURANCE COMPANY, Defendant and Respondent.

Thomas W. Thurman for Plaintiff and Appellant.

Crider, Tilson & Ruppé and Garvin F. Shallenberger for Defendant and Respondent.

GRIFFIN, P. J.—Plaintiff-appellant Edward W. Merrill, doing business as Merrill Insurance Agency, brought this action against defendant-respondent Continental Assurance Company, a corporation, to recover $9,000 damages for claimed breach of a general agency contract. A second cause of action was for claimed misrepresentations of defendant in reference to one David O. Cook, employed by plaintiff on representation by defendant that Cook was a $400,000-per-year "producer" of insurance policies, when in fact he produced a lesser amount. Plaintiff thereby claims that he suffered a loss of $3,600.

On April 23, 1948, plaintiff and defendant entered into a written contract entitled "General Agent's Contract," which was attached to plaintiff's complaint and marked exhibit A and was received in evidence as plaintiff's exhibit 1. Paragraph 4 of that contract reads in part:

"4. If this contract be terminated for any reason or cause other than one of those mentioned in Section (17) hereof, then in such event, provided the General Agent shall not then be in default for violation of any of the terms of this contract, there shall be allowed after such termination to the General Agent . . . the following commissions and allowances on earned premiums paid . . . on policies written hereunder, less the amount of any commissions or other costs accruing under contracts of the General Agent with other agents or brokers.

". . . . . . . . . . . . . .

"(c) Such number of renewal commissions on earned premiums paid in cash to and accepted by the Company after such termination on aforesaid policies which, when added to the number paid or allowed thereon up to such termination, shall not exceed nine annual renewal commissions on any one policy. The rates of such renewal commissions shall be those specified in said Schedule less a deduction in each case of the percentage hereafter stated of amount of renewal premium (other than Group or Wholesale premiums) collected by the Company on which such commission is based."

Paragraph 17 thereof provides: "17. The General Agent shall not wrongfully withhold any funds, vouchers or other property belonging to an applicant or a policyholder. Any

failure of the General Agent to make the reports or to pay over to the Company the premiums, monies, or other property as provided herein, or to comply with any of the terms and conditions of this contract, shall at the option of the Company and upon notice to the General Agent, effect an immediate termination of this contract and a forfeiture of all rights of the General Agent under the same, and all commissions provided for herein.''

Paragraph 21 thereof provides: ''21. Unless otherwise terminated, this contract may be terminated by either party upon written notice to the other party (notice by mail to the last known business address of the other party shall be sufficient), stating the date thereafter when termination shall be effective, which date shall not be less than thirty days from the date the notice is mailed or otherwise given. The authority of the General Agent to act hereunder shall cease on the date specified in the notice.''

There are many documents in evidence, consisting mainly of letters passing between the parties. The evidence shows that during the life of this contract certain financing arrangements were made between the general agent, the plaintiff, and the defendant company, whereby money was loaned by defendant to the general agent to be loaned to his agents as an independent contractor. He was lending this money out to his agents to help finance them. Memorandums of indebtedness were made and signed by plaintiff in each instance where money was advanced by the defendant company to plaintiff. They were accompanied by promissory notes in the amount of the money advanced. Each month the plaintiff was to report on the financing arrangement, the status of it, and at frequent intervals they would get together and go over the financing, consult on it and determine whether the defendant company would advance any more money to the plaintiff. The memorandums of indebtedness were in the general form that plaintiff did:

''. . . hereby acknowledge receipt of a loan made to me by the Continental Assurance Company of Chicago, Illinois, in the sum of $_____, on [date], which loan indebtedness is evidenced by my promissory note dated_____, in the amount of $_____, payable to the order of said Company.

''As security for the payment of said note, I hereby pledge, transfer, and assign unto said Company all first year commissions hereafter accruing to me and such other compensation as may accrue to my credit from said Company under my written agency contract, dated April 23, 1948.

Dated this＿＿＿day of＿＿＿＿＿＿＿＿．''

After plaintiff had been acting as general agent for the defendant for some years, he wrote a letter to Mr. John T. Grant, as defendant's superintendent of agents, on February 12, 1955, which stated, in part: ''It must be said that the letter [Mr. Grant's letter of February 10, 1955] was clear, concise and unmistakable, but made the situation *really* intolerable, in the light of past performance of Company representatives and this agency.

''We therefore are moving definitely toward a general agency connection with another company. This company in no way will interfere with our continued care and servicing of all Continental Assurance Company policies. For special policies not available in our new connection, and for surplus lines, we would like also to maintain our license and contract relations with C.A.C. There may be one or more agents who will place substantial business with C.A.C. Some sort of unit arrangement can be made, as you may desire that, I am sure. As C.A.C. features brokerage, this should offer no serious problem.

'' . . . . . . . . . . . . .

''It will be our earnest desire to effect this change without disturbing nor placing at any disadvantage a single C.A.C. policyholder who has looked to us for service. We shall spend time and money to conserve this business, so we ask that this thought be kept foremost in mind, regardless of the fact that our new sales will be largely, and our agency development entirely, in another direction.

''We have had some very fine experiences with you and others of C.A.C. After our last conference, I had revived my hopes that these would continue indefinitely. But, even with everything to date I can truthfully say that severances do not prevent my sincere good wishes for a sound advancement for us all in this, our chosen field of working with the buying public.''

In reply to Mr. Merrill's letter, Mr. Grant, on March 11, 1955, wrote: ''On February 12, 1955 you wrote the Company, notifying us that you were definitely moving towards a General Agency connection with another Company. On March 7th, 1955, you wrote, notifying us that you had completed General Agency arrangements with the North American Life Insurance Company of Chicago, Illinois.

''Therefore, we accept your letter of February 12th as a letter of resignation of your General Agency Contract with

this Company. This resignation is accepted effective April 1, 1955.

"One of the first points of business that comes to mind in terminating this contract is your indebtedness to the Continental Assurance Company, as evidenced by Promissory Demand Notes and Memos of Indebtedness . . . The Continental Assurance Company demands immediate payment of your indebtedness, as of the date of this letter."

On April 30, 1955, Mr. Merrill wrote Mr. Grant as follows: "Recent correspondence, particularly your letters of March 11, 1955, and April 26, 1955, add up to confusion and disagreement here.

"In your March 11th letter, your reference to my letter of February 12, being one of resignation is simply your writing words into my letter, words which are not there by any implication.

"Actually, my contract, dated April 23, 1948, is not terminated, but is still in full force and effect. Reason: (1) It has not been terminated according to paragraph 21 of the contract. (2) Paragraph 22 states that his contract constitutes the entire agreement between the parties hereto. Only certain specified officials have the right to amend or alter the contract; and so far as provisions for termination are concerned, there has been no such amendment or alteration.

"Clearly my February 12 letter indicated that I did not desire termination; and now you apparently are of the opinion that I am not really terminated; for on April 26, 1955 you have written, suggesting my continuance on a brokerage basis. I see no point in discussing that until the true status of my original contract is defined. For this purpose, I have retained legal counsel, because I cannot reach all these decisions alone. The volume of correspondence, and requests from your office and from your Cashier's Office have not been designed to lighten our office load.

"Please be advised that as of this date, any commissions otherwise due and payable under my contract of April 23, 1948 still are to be credited in full toward reduction of the agency balance representing loan made by the Company for financing of individual agents in this agency."

The Continental Assurance Company home office superintendent of agents wrote Mr. Merrill on May 5, 1955, in part: ". . . your letter of April 30th addressed to Mr. John Grant concerning the matter of contract termination has been referred to me for attention.

"Our interpretation of the situation referred to in that letter appears to be different than yours, but rather than have any misunderstanding with you as to contract termination we from this office will give notice under Section 21.

"The Continental Assurance Company does hereby notify you that it elects to terminate your agency contract with the Company dated April 23, 1948, such termination to take effect June 6, 1955 in accordance with the terms and conditions of said agency contract."

Thereafter, Mr. Merrill took the position that the defendant did not have the right to terminate the contract with him because, among other things, he had a vested interest in it, and claimed that the company had not actually terminated the contract since it continued to pay him commissions on the policy renewals, less his override commissions, under paragraph 4 of the contract; that defendant could not terminate the portions of a contract which are detrimental to defendant and retain the beneficial portions of the contract; that the contract is not severable in that respect; that all of these memorandums of indebtedness are parts of this contract and part of the overall transaction between the parties. It is further claimed that the contract was not subject to cancellation by defendant under section 21 of the contract unless plaintiff be allowed to receive the full compensation set forth in the contract until all parts of the contract evidencing indebtedness of plaintiff to defendant be satisfied by such commissions.

The trial court found generally against plaintiff and in favor of defendant, and specifically found that the defendant terminated the contractual agency relationship as of June 5, 1955, sending written notice to plaintiff to that effect in accordance with paragraph 21 of said contract (exhibit A); that since said termination of said contract, defendant has paid to plaintiff all commissions due and owing him and that no other commissions were due and owing him other than those provided in the reduced commission schedule as set forth in paragraph 4 of said exhibit A, i.e. 2½ per cent; that defendant does not owe plaintiff any other sum under the contract; that the contract and agreement between the parties were subject to termination as provided in paragraph 21, which provision defendant followed in terminating said contract; that the reason for the termination was that plaintiff informed defendant that he proposed to enter into a general agency relationship with another life insurance company; that said termination was made in good faith by the defend-

ant; that it is not true that defendant withheld any portions of any commissions due and payable to the plaintiff; that defendant has been paying to plaintiff, in accordance with the terms of the contract, all commissions to which he is entitled as they become due. The court then specifically found against plaintiff's second cause of action and that defendant made no misrepresentation as to Cook's production record. Judgment was accordingly entered in favor of defendant.

On the first cause of action, plaintiff set forth several assignments of claimed error: (1) that the trial court failed to find that the entire contract consisted not only of exhibit A, attached to the complaint, but all other documents produced; (2) that the trial court erred in finding that all commissions due had been paid to plaintiff; (3) that the trial court erred in concluding that paragraph 4 of the contract controlled the rights of the parties; (4) that the trial court failed to find that plaintiff had a vested right in the commissions due him at the full rate; (5) and (6) that the trial court erred in finding that the contract had been terminated but was still enforceable in other respects; (7) that the trial court erred in not finding that the contract was terminated in bad faith; (8) that the trial court erred in not finding that an ambiguity existed as to the respective rights of the parties; (9) that the trial court erred in finding that there was no misrepresentation regarding the agent Cook; (10) that the trial court gave insufficient consideration to the words ''for any reason or cause'' used in paragraph 4 of the contract; and (11) that the trial court erred in not finding that the termination only affected plaintiff's right to represent the defendant, and since the contract was not terminated ''for any reason or cause,'' plaintiff's rights were vested and enforceable.

As to point (1), the trial court, in finding 3, in effect held that it did consider the contract (exhibit A) in conjunction with other documents and agreements as supplemental or amendments to the original contract and that compliance with section 21 of exhibit A was a sufficient and proper termination of the agreement. As to points 2, 3, 4, 8, 10 and 11, under the terms of the contract, upon termination of it, under section 21 of exhibit A, which in turn refers to paragraph 4 thereof in relation to commissions due after termination, plaintiff would suffer a deduction of $2\frac{1}{2}$ per cent on the commissions indicated. As pointed out by plaintiff, when he entered into the financing plan with defendant he was to

receive 7½ per cent "override" commissions. Under the provisions of paragraph 4, upon termination, these override commissions were reduced to 5 per cent of renewals. Defendant has since paid these commissions on this reduced basis. Plaintiff brought suit against his subagents to recover the loans he paid to them and obtained judgment. Plaintiff subsequently repaid defendant all money he borrowed from it on his memorandums of indebtedness and promissory notes. We find no evidence establishing, as a matter of law or fact, that plaintiff had a vested interest in the contract or any evidence that would justify the application of any other or different method of cancellation which would be applicable to the facts produced. Paragraph 4 fully provides for and plainly sets forth the method that should be adopted and the resulting effect in case of such a termination, i.e., a reduction of 2½ per cent. We see no ambiguity of the agreement in this respect. Accordingly, the finding that all commissions due plaintiff had been paid was justified. The fact that defendant was still paying the subagents of Merrill 5 per cent commission on all renewal business would not affect the terms of the original agreement with plaintiff. As to points (5) and (6), we see no merit to this contention. ■ It is the universal rule that: "Where under the contract a party may terminate it at his option, he is not liable after termination for further transactions thereunder, but obligations which have already accrued are not affected. Stipulations in the contract as to the rights of the parties on termination will ordinarily be enforced according to their terms." (17 C.J.S., § 404, pp. 893-894.)

■ Parties to a contract may provide therein for their respective rights and liabilities in the event of the termination thereof. (*J. R. Watkins Co.* v. *Brewer*, 73 Ga.App. 331 [36 S.E.2d 442]; *Coleman* v. *Ford Motor Co.*, 195 Mo.App. 554 [193 S.W. 866].) In *Barr* v. *Sun Life Assur. Co. of Canada*, 146 Fla. 55 [200 So. 240, 243], it was said: ". . . the great weight of authority holds that the agent [after termination] has no vested rights in commissions on renewal premiums and that his right to be paid commissions on renewal premiums must be based entirely upon the terms of the contract. . . ."

In 44 Corpus Juris Secundum section 162, pages 844-845, it is said: "Except to the extent that his contract provides for renewal commissions, an agent is not entitled to commissions on renewal premiums paid after a proper termination of his agency. . . . On the termination of the agency the agent or his

assignee may, however, recover commissions on premiums earned and actually due at the time of the happening of the breach for which the contract was terminated, less any sums owing by the agent to the company." See also 3 Couch on Insurance, section 560, pages 1784, 1799 and 1800; *Deacon* v. *Equitable Life Assur. Society,* 17 Ga.App. 74 [86 S.E. 91]; *Ryan* v. *Phoenix Mut. Life Ins. Co.,* 264 App.Div. 532 [35 N.Y.S.2d 792]; *Geisler* v. *Equitable Life Assur. Soc.,* 169 Va. 118 [192 S.E. 703]; *Milwaukee Mechanics' Ins. Co.* v. *Warren,* 150 Cal. 346 [89 P. 93]; *National Union Fire Ins. Co.* v. *Nason,* 21 Cal.App. 297 [131 P. 755]; *Freeman* v. *Monarch Life Ins. Co.,* 138 Cal.App.2d 702 [292 P.2d 549].

As to point (7), we see no merit. The finding of good faith on the part of defendant has evidentiary support.

█ Finally, as to point (9), it was found that defendant made no misrepresentations as to the past capabilities of agent Cook. There is evidence that one of defendant's agents told plaintiff that Cook had been a $400,000-a-year producer of insurance policies business and this would justify a $400-per-month "advance" paid to him. Plaintiff testified that Cook was employed by him as an agent, but in fact Cook only produced $188,000 per year business.

Defendant's west coast agent testified that Cook had produced in the neighborhood of $285,000 paid business with Continental Assurance Company and in addition approximately $100,000 worth of business for other companies the same year. There was testimony that while Cook was with plaintiff, Cook's wife was in a very serious condition, which required his attention and which might well have explained Mr. Cook's failure to produce what otherwise might have been anticipated. Plaintiff recovered a judgment against Cook for the balance of the money due from Cook for loans made. Whether he did or will realize on that judgment is not shown. Many other factors, for which defendant would not be responsible, could be considered by the trial judge in reference to Cook's ability to produce business. The trial judge found that no detriment or loss was suffered by plaintiff by reason of any claimed misrepresentation. At most, there was a conflict in the evidence on the subject matter and the trial court resolved it against the plaintiff. █ Conflicting evidence presents a question of fact. (*George Herz & Co.* v. *Solt,* 23 Cal.App.2d 178 [72 P.2d 251].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.