**FOG v. R. C. WILLIAMS & CO., Inc.**
No. 12242.

United States Court of Appeals
Ninth Circuit.

Jan. 30, 1950.

Rehearing Denied March 23, 1950.

tum Suden & tum Suden, Richard tum Suden, San Francisco, Cal., for appellant.

Sullivan, Roche, Johnson & Farraher, San Francisco, Cal., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Plaintiff-appellant, a citizen of California, brought this action against the defendant-appellee, a New York corporation, seeking to have set aside for fraud and deceit, a certain agreement which compromised and settled a claim against the corporation for commissions alleged to be due plaintiff on the sale and distribution of whiskey. The trial court after hearing the plaintiff's evidence sustained a motion to dismiss and made findings and conclusions holding in substance that the defendant had not made misrepresentations or practiced fraud in the manner claimed by the plaintiff and that at the time that the agreement of settlement was made plaintiff knew all of the material facts concerning the subject matter of the contract and particularly the importation for sale of whiskey referred to in the agreement. The sole question for us is whether these findings are supported by the evidence.

The record shows that during the period in question the appellee was engaged in the business of importing and merchandizing liquors, with its principal office in New York City. It had a division or department which was located at other offices in New York and which was operated under the name "Williams Importers". In 1942 the appellant Fog was appointed by the Williams Importers division of the company as manager of the western branch of that division for the sale and distribution of liquors handled or to be handled by the division in the 10 states of California, Nevada, Arizona, Washington, Oregon, Utah, Idaho, Montana, Wyoming, New Mexico and the Territories of Hawaii and Alaska.

It was agreed that plaintiff should receive a stated salary plus a commission or bonus ranging from 10¢ per case for the first 5000 cases sold by his branch to 25¢ per case for every case over 15,000 cases.

In the fall of 1944 plaintiff discovered that the defendant corporation, operating from its main office, and not through the Williams Importers division, was selling Harwood's whiskey, a Canadian whiskey, in the States mentioned. He at once demanded of the defendant that he be paid his stated commission or bonus on all cases of Harwood whiskey shipped into his territory, not on the ground that he or his branch had sold the whiskey but on the ground that in 1943 there had been an agreement between the plaintiff and the defendant that from that time on no merchandise would be shipped into plaintiff's territory by the defendant except through the Williams Importers division. The facts were that in April, 1944, the defendant corporation entered into an agreement with a Cuban corporation which had the exclusive right to sell Harwood's whiskey throughout the world, under which R. C. Williams & Co., Inc., was designated exclusive agent to distribute the whiskey in the United States. This agreement provided that the defendant would purchase all whiskey to be distributed outside of the State of New York at $19.05 per case and sell it at $20.77 per case which after deducting 12¢ required for stamps left a gross profit to the defendant of $1.60 a case. A few days after the execution of the agreement mentioned, the defendant corporation entered into an agreement with the Cuban corporation whereby defendant agreed to pay a brokerage commission of not less than 60¢ per case to brokers and selling agents selected by it but approved in writing by the Cuban corporation. The Cuban corporation also reserved the right to refuse to permit sales to any customer of the defendant. The record does not show whether the 60¢ commission was or was not paid out of the $1.60. If it was, the defendant's net was $1.00 per case.

When the plaintiff first began inquiring as to his commission on the Harwood whiskey, although he was told that he was not entitled to such commissions, he was not given much information about the conditions under which the defendant was handling it. Thus in October, 1944, he was furnished with a copy of a letter proposed to be sent by the Williams Importers division to its distributors, which contained a paragraph stating: "Actually, our company has had nothing to do with the sales representation of this item. All sales were made by representatives of the distillery and at their terms. As a service to the Canadian distillery, R. C. Williams & Co., Inc., 265 Tenth Avenue, New York City, merely cleared all United States sales for them and served as a wholesaler in New York City for this product." About the same time he received a letter from the general manager of the division stating: "As you know, we are not making any money at all on the Canadian Whiskey and outside of a moral obligation, I have been glad to obtain this merchandise for Parrot & Co., having in mind that they will use this Whiskey to push our other items." A few days later the assistant manager of the same division wrote plaintiff stating: "Also please point out that we have nothing to do with the setting of the terms any more than we had anything to do with the sale of the whiskey." There is considerable discussion in the briefs as to whether the last two statements quoted in using the word "we" should have been understood as referring solely to the Williams Importers division, or whether plaintiff was thereby reasonably led to believe that the statement referred to the defendant corporation as a whole.

But however that may be, the evidence discloses that as the argument continued with respect to plaintiff's claim for commissions on the Harwood whiskey, some of it by correspondence and some at oral conferences, plaintiff finally came into possession of much more complete information as to how the whiskey was being handled. On February 6, 1945, the assistant manager of plaintiff's division wrote at length about the Harwood whiskey, describing his efforts to get the defendant corporation to turn the distribution of the whiskey in

plaintiff's territory over to the division, even on terms that would involve no commission in order to permit the division to use the whiskey, which was then a very scarce article, to aid sales of its other merchandise. This letter contains the statement: "R. C. Williams & Company, and any or all of its Divisions, do not make more than $1.00 per case on all of the Harwood that is sold except on that amount of Whiskey which is wholesaled here in New York City." Plaintiff replied to this letter, calculating the carload profit made by the defendant corporation on each car sold and said: "In this case, R. C. Williams is making some good money on Harwood whiskey. The only trouble appears to be that after that profit is made, the fight is on as to who is going to have what * * *" About the same time plaintiff wrote to the manager of Williams Importers division "I am now advised that our company is making at least $1.00 per case on sales of Harwood Whiskey not counting the profit made by the wholesale division in New York, while it is previously stated that this business was to be entirely free of profit to our company. If we base Williams' profit of $1.00 per case on transactions of Harwood's Whiskey outside of the metropolitan area, Williams are making a gross profit of $1750 for each car sold."

At the trial plaintiff testified that he knew as early as 1944 that if any of his customers wanted Harwood's whiskey they had to get it through R. C. Williams & Co. In 1945 when the parties were talking about submitting their dispute to arbitration, plaintiff prepared a statement or brief for presentation to the expected arbitrators in which he stated: "Beginning in the autumn of 1944, the Wholesale Liquor Division of R. C. Williams & Co., Inc., made direct shipments into my territories of Harwood's Canadian Whiskey, 90.4, in absolute violation of their agreement with me." On March 8, 1946, the pending dispute was compromised and settled and as a part of the settlement defendant paid plaintiff $10,-000. This is the compromise agreement which plaintiff sought through this action to set aside. As a part of the compromise

plaintiff was given a new agency contract on terms expressly excluding commissions on sales of this whiskey. Later he resigned at the defendant's request. Subsequently, when examined by the Bureau of Internal Revenue concerning defendant's tax matters, plaintiff says he learned for the first time the facts concerning defendant's dealings with Harwood whiskey. He then brought this suit.

In the complaint the false representations claimed were described as follows: "Defendant corporation falsely and fraudulently and for the purpose of deceiving and misleading plaintiff represented and maintained that defendant corporation had nothing to do with the importation or sale of said Harwood's whiskey in the said western division area; and denied that it had demanded or received any commissions on sales of such whiskey so imported and sold in said area." At the trial appellant stated that he had known that it was not true that the defendant corporation "had nothing to do with the importation or sale of said Harwood's whiskey" but he contended that it was represented to him that R. C. Williams & Co. was not buying and selling the whiskey but only handling it "as a matter of accommodation for the distillery". He claimed that such representations were false because the corporation was actually buying the whiskey on its own account and that it was false also because it was not dealing with the distillery but rather with the Cuban corporation which was the distillery's exclusive sales representative.

The court found: "During the exchange of letters between plaintiff and the officers of defendant corporation with reference to said claim, Plaintiff was advised by his superior officers that the only money defendant corporation made or was making out of the sale of said Harwood's Whiskey in the said territory claimed by plaintiff was $1.00 per case. Plaintiff offered no evidence to show that this advice was not correct and true. At all times during said exchange of correspondence, and said oral conversations, plaintiff knew that defendant corporation was making $1.00 a case profit on

472

the whiskey shipped into said territory; that any sales of said whiskey in said territory had to 'clear' through defendant corporation and that the invoices for the sales of said whiskey were issued from the office of defendant corporation at 265 Tenth Avenue, New York City, State of New York." The court found further that the plaintiff had this knowledge prior to and at the time of the settlement; that plaintiff had shown no fraud that was practiced upon him by the defendant, and concluded that plaintiff was not entitled to recover.

As for the claim that there was no knowledge on the part of the plaintiff that defendant had a contract for purchase and resale of the whiskey, or that it dealt with the Cuban corporation, and not with the distillery, the court explained its view that those matters were not of "material significance", as follows: "I couldn't find in my conscience to set aside any agreement on such a technicality as he makes on the witness stand, that he would be entitled to his commission for $1.60 calculated under one plan or another plan. I do not see any warrant for doing that. The damage to him arises not by virtue of the manner in which the contract was made between the distiller and the supplier; the damage arises because of the introduction and the disposition and the distribution of the liquor in his territory. That is what causes him his damage."

What is here stated is far from being a complete statement of all of the facts. It is sufficient, however, in the opinion of the court to disclose that there was substantial evidence to sustain the court's finding which is to the effect that the plaintiff was informed of all of the material facts when he executed the compromise agreement. The court was justified in holding that the plaintiff had not sustained the burden which was upon him to prove that he had been misled through fraudulent misrepresentations. This being the case, since we cannot hold the findings of fact clearly erroneous, the judgment must be allowed to stand.

The judgment is affirmed.