OCCIDENTAL LIFE INS. CO. OF CALIFORNIA v. MARMADUKE CORBYN AGENCY et al.

No. 4141.

United States Court of Appeals Tenth Circuit.

Feb. 27, 1951.

554

V. P. Crowe, Oklahoma City, Okl. (Embry, Johnson, Crowe, Tolbert & Shelton, Oklahoma City, Okl., were with him on the brief), for appellant.

John H. Cantrell, Oklahoma City, Okl. (Cantrell, Carey & McCloud, Oklahoma City, Okl., were with him on the brief), for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Occidental Life Insurance Company, hereinafter called the company, against Marmaduke Corbyn Agency and its members, hereinafter called Corbyn, for a declaration of rights under a settlement contract terminating a pre-existing insurance agency contract between the parties. The trial court decided the issues against the company, and this appeal followed.

While a number of issues were originally involved, the sole question finally submitted to and decided by the trial court was Corbyn's right to commissions upon converted term policies where the term policies were issued during the existence of the agency contract and the conversion to other forms of insurance occurred after such termination. The correct answer to this question, in turn, depends upon the construction of Paragraphs one and five of the settlement contract. Paragraph one reads as follows: "The life agency contract and the accident and health agency contract are hereby terminated. The rights and obligations of the parties hereto with respect to renewal commissions under each of said contracts shall be governed by the terms and provisions thereof. Renewal commissions shall be paid if, as, and when premiums are received by the company, including premiums hereafter paid by automatic loans." Paragraph five of the contract provides, as follows: "Upon the conversion of any term policy now in force, issued on an application submitted by the agency and/or the members or any of their sub-agents, the agency shall be entitled to receive fifty (50%) per cent of the first year conversion commissions, together with renewal commission as provided in the life agency contract, unless

such policy was converted by the original writing sub-agent or such sub-agent is at the time in the service of the company." After a hearing at which written and oral testimony was received and considered, the court found that the parties intended to provide by paragraph one of the settlement contract that the rights to renewal commissions should be governed by the terms of the pre-existing agency contract and that thus construed, the parties intended that Corbyn was to have paid to it renewal commissions upon all term policies originally written by Corbyn or its agents and converted to other forms of insurance after the termination of the agency contract, and that by Paragraph 5, the parties intended to deal only with first year conversion commissions on such converted policies. To reach this result, the trial court construed the word "or" in the concluding "unless" clause of Paragraph 5 as meaning "and", holding that otherwise the phrase would be meaningless and in conflict with paragraph one.

The effect of the court's findings was that Corbyn was entitled to all commissions on term policies written by it under its agency contract but converted after the termination thereof, save only in those cases in which the sub-agent who originally wrote the policy converted it *and* was at such time still in the service of the company. Occidental, on the other hand, contends that the correct construction of the settlement contract is that Corbyn was not entitled to commissions on a subsequently converted policy if the agent originally writing the term policy converted it or still was with the company.

The settlement contract was executed in Oklahoma and was to be performed there, and the law of the State controls its interpretation and effect. Oklahoma, by statute, has provided that a contract must be interpreted so as to give effect to the mutual intentions of the parties; that the language of a contract governs its interpretation if it is clear and explicit and does not involve an absurdity; that in construing a contract, effect must be given to every part thereof if reasonably practical; that a contract may be explained by reference to the circumstances under which it was made and that repugnancy in a contract must be reconciled if possible by an interpretation giving effect to the repugnant clause subordinate to the general intent and purposes of the whole contract.[1]

In line with these statutory pronouncements, the Oklahoma courts have held that where a written contract is complete in itself, and when viewed in its entirety is unambiguous, its language is the only evidence of the parties' intentions; that the intent must be deduced from the entire agreement and that construction adopted, which, if possible, gives effect to all parts thereof; that the language of a contract governs its interpretation and the court may not substitute one word for another unless interpreting the contract according to its real meaning would involve an absurdity or produce an unreasonable result, and that where an agreement contains both general and specific paragraphs, differently defining rights of the parties, a provision within a specific paragraph is controlled by it, though it is also embraced in the general provision.[2]

Measured by these rules and decisions, we think the trial court erred in its conclusions. We see no ambiguity or uncertainty in the language of either paragraph one or five, nor is there in our opinion any conflict between the two. The life agency contract was terminated. The settlement contract terminating it had a two-fold purpose. First, to terminate the agency contract and Corbyn's rights to further represent the company; and, second, to define and establish Corbyn's right to continue to receive commissions on policies outstanding at the time of termination of the agency contract. The first sentence

1. See Title 15 O.S.A. §§ 152, 154, 155, 163 and 168.

2. Lehr v. Melton, 172 Okl. 150, 44 P.2d 111; Lee v. National Refining Co., 181 Okl. 556, 75 P.2d 406; Sullivan v. Gray, 182 Okl. 487, 78 P.2d 688; Crosbie v. National Bank of Commerce, 86 Okl. 174, 207 P. 311.

of paragraph one terminated the agency contract. The second sentence provided that Corbyn's right to receive commissions was controlled by the agency contract, although terminated. The effect of this was to give Corbyn renewal commissions on all outstanding contracts of insurance so long as they remained in force, and the premiums continued to be paid. Under this construction, Corbyn would be entitled to its commissions on term policies the same as other forms of insurance, so long as the policy remained in force and the premiums continued to be paid.

It is obvious, however, that this provision was not intended to, nor could it under the terms of the terminated agency contract give Corbyn an interest in renewal commissions on term policies written during the existence of the agency contract, but converted to other forms of insurance after its cancellation. Paragraph 20 of the agency contract gave Corbyn commissions during the continuance of the agency contract on policies "issued, delivered, and paid for by him himself or by his sub-agents * * *." Policies paid for are defined as: "Policies * * * for which the premiums have been paid over to and settled with the Company in accordance with the terms and conditions of this contract and which are issued and delivered under this contract."

This language is inapplicable to term policies converted after the termination of the agency contract. It is without dispute that when a term policy is converted, the policy is surrendered and a new policy is issued. Such business is considered and treated as new business. It, therefore, follows that in the absence of other provisions, under these provisions as outlined above, the agency was not entitled to commissions on term policies written during the agency contract but converted to other insurance after its termination because a converted policy was not "issued and delivered under" the agency contract. This is the construction placed on similar language in Geisler v. Equitable Life Assurance Society, 169 Va. 118, 192 S.E. 703, 704. There, the contract gave the agent commissions on premiums "as paid * * * on policies issued under this contract." It was held that a converted policy was not a policy written under the contract.

Paragraph 27 of the agency contract deals with terminated and new policies on the same life. It provides, "If a policy is terminated and a new policy is issued on the same life, which, in the judgment of the Company, is to take the place of the terminated policy, the new policy shall be regarded as 'changed policy' and no commission or bonus will be allowed the Agent thereon, except in cases of conversion of policies originally written by the Agent. On all conversions of policies originally written by the Agent brought about entirely through the instrumentality of the Agent, the Company will allow the commission and bonus provided by the contract less the commission and bonus paid on the original policy."

This provision makes it clear that under the agency contract before Corbyn was entitled to commissions on converted policies, the conversion must be brought about entirely through the instrumentality of its agency. After the termination of the agency contract, Corbyn no longer represented the company and could not, therefore, bring about conversions of term policies.

■ It thus seems clear that all that paragraph one of the settlement contract preserved to Corbyn was renewal commissions that were payable under a terminated agency contract. Commissions payable under such a contract were those payable on policies outstanding at the time of termination, and could not, without other provisions in the settlement contract, include commissions on converted term policies, converted after the termination of the agency contract. Such policies constituted new business. They were not paid for or delivered under the agency contract.

■ Paragraph five was, no doubt, inserted into the settlement contract to provide for the commissions on converted term policies converted after the termination of the agency contract. That is the

specific subject with which it deals. It is a subject which is left undisposed of in paragraph one. It is clear and concise and leaves no doubt as to its meaning, and needs no outside aid for its construction. It carried out the expressed intent of the parties that the company was not to benefit in any way by the termination of the agency contract. It made a complete disposal of all commissions on such converted policies. It provided in clear and concise language that Corbyn was entitled to commissions on all converted term policies converted after the expiration of the agency contract, save only those that were converted by the original writing sub-agent, or if the sub-agent who originally wrote the policy was at the time of its conversion still in the service of the company. As to such converted policies, Corbyn was not entitled to any commission.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.