FIRST NATIONAL BANK OF HOMINY, OKLAHOMA, a banking corporation, Plaintiff-Appellee,

v.

The CITIZENS AND SOUTHERN BANK OF COBB COUNTY, MARIETTA, GEORGIA, Defendant-Appellant.

No. 80–1828.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 29, 1981.

Decided May 28, 1981.

E. J. Raymond of Drummond, Raymond, Payne, Weinstein & Davis, Tulsa, Okl., L. M. Awtrey, Jr., and Toby B. Prodgers of Awtrey & Parker, P.C., Marietta, Ga., for defendant-appellant.

James C. Lang of Sneed, Lang, Adams, Hamilton, Downie & Barnett, Tulsa, Okl., for plaintiff-appellee.

Before SETH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.

SETH, Chief Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). This cause is therefore ordered submitted without oral argument.

This is a diversity case and the defendant appeals from judgments awarding plaintiff $50,000 plus interest and attorney fees on a guaranty executed by the defendant-appellant. Defendant-appellant, the Citizens and Southern Bank of Cobb County (hereinafter C & S), is a Georgia state bank. Plaintiff-appellee is the First National Bank of Hominy, Oklahoma (First National). The plaintiff bank brought suit on a letter received from the defendant bank wherein it was stated that defendant would repurchase plaintiff's "interest" in a loan to be made to a named person in a stated amount. The loan was made by plaintiff, the borrower defaulted, but defendant refused to repurchase the loan and this suit was commenced.

The basic issues concern the authority of the officer who signed the letter to bind defendant bank to a guaranty, whether the guaranty was ultra vires, and whether interest and fees should be included should the judgment for plaintiff stand.

Mr. John Beville was a commercial officer and a branch manager for C & S. After making several car loans to a Mr. McAlpine, Mr. Beville made him a loan for an oil and gas venture in Oklahoma. Thereafter the officer told Mr. McAlpine that C & S would not continue to finance his oil transactions in Oklahoma. He suggested that a bank in Oklahoma be used for such financing.

Mr. McAlpine followed the suggestion and contacted Mr. Thomas Wright, President of First National in Oklahoma, and requested a $50,000 loan. Mr. Wright telephoned Mr. Beville at the C & S branch that Mr. Beville managed. Mr. Beville stated C & S would subordinate Mr. McAlpine's security on outstanding C & S loans if First National would make Mr. McAlpine the $50,000 loan he sought. Mr. Wright and Mr. Beville agreed that the additional equipment this new loan would finance would increase the value of the existing security. Further, Mr. Beville stated that C & S would repurchase upon request First National's interest in the loan to Mr. McAlpine. Mr. Beville confirmed his statements in a letter to Mr. Wright. The letter reads:

"Per our telephone discussion, September 14, 1977, the C & S Bank of Cobb County agrees to repurchase your interest in a $50,000.00 loan being made to Louis McAlpine. It is my understanding that this debt will be secured by gas rights and equipment. We will subordinate our position on the equipment to you as long as the debt remains outstanding on this particular note.

"It is my assumption that your debt is for a term of a minimum of nine months to one year. However, this would not be a requirement with reference to our guaranty. We will continue to have on file our financing statement on the equipment in that the subordinate will allow you first position."

Following receipt of the letter, and the trial court found "in reliance" thereon, First National made the $50,000 loan to Mr. McAlpine who placed the entire amount in an account at First National. A few days later Mr. McAlpine drew a $50,000 check on

his First National account and opened a savings account at C & S in that amount. C & S then made Mr. McAlpine a $67,000 loan, collateralized by another savings account with a $17,000 balance and the $50,000 savings account made possible by the First National loan. The $67,000 loan was authorized by Mr. Beville who knew First National had made the $50,000 loan to Mr. McAlpine. Before Mr. McAlpine depleted the $50,000 account C & S applied $21,899.85 of the amount to cover Mr. McAlpine's indebtedness to C & S.

■ Appellant contends that Mr. Beville did not have actual or apparent authority to execute a contract of guaranty binding on C & S. Also, that he had exceeded the dollar maximum of his loan authority under C & S's loan policy. The appellant in this position relies on *McCall v. Monarch Royalty Corp.*, 179 Okl. 213, 64 P.2d 871, and states that "[t]his rule applies 'to the extent of requiring one dealing with an agent to discover at his peril whether such agent has power to do the proposed act,'" citing *American Body & Trailer Co. v. Higgins*, 195 Okl. 349, 156 P.2d 1005, 1009. Appellant asserts that First National failed in its duty of inquiry and thus acted at its own peril when it dealt with Mr. Beville.

First National's response is based on another Oklahoma case, *R. V. Smith Supply Co. v. Stephens*, 169 Okl. 555, 37 P.2d 926. In that case the Oklahoma court held:

"On this point we hold that one dealing with a known agent has a right to presume that the agency is general and not special and that the agent is acting within the scope of his authority and the principal will be bound by the act of the agent."

In 1978 we decided *Master Commodities, Inc. v. Texas Cattle Management*, 586 F.2d 1352 (10th Cir.), a case in which the parties argued these same cases, and said:

"Reading these and other cases, it seems clear that Oklahoma, as other states, looks at the use of the agent in the context of the particular case, and holds that there is apparent authority for acts which might reasonably be expected to be performed by such an agent."

In *Phillips Petroleum Co. v. Buster*, 241 F.2d 178 (10th Cir.), this court also stated:

"It is the law in Oklahoma that apparent authority exists when the principal, by statement or conduct, either places the agent in position in which he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such position so that third persons are justified in believing that he is acting within his authority."

See also *Black v. O'Haver*, 567 F.2d 361, 373 (10th Cir.), and *McNutt Oil & Refining Co. v. Mimbres Valley Bank*, 174 F.2d 311, 314 (10th Cir.).

The trial court also concluded that "[u]nder Georgia law a principal may confer authority on an agent merely by a course of conduct holding out that person as an agent which induces others to rely on the statement of that agent. *Ampex Credit Corp. v. Bateman*, 554 F.2d 750, 753 (5th Cir. 1977)." Under both Oklahoma law and Georgia law Mr. Beville had the requisite authority to enter into a contract of guaranty, for he was placed in a position by C & S in which he appeared with reasonable certainty to be acting for C & S. Thus First National was justified to believe that he was acting within his authority.

■ Aside from the doctrine of apparent authority, C & S was liable for Mr. Beville's action as the trial court concluded, and we hold correctly so:

"When a bank officer exceeds the scope of his authority to make a contract, and the bank secures a benefit therefrom, the bank will not thereafter be heard to urge nonliability on a plea of ultra vires. *Crowder State Bank v. Aetna Powder Co.*, 41 Okl. 394, 138 P. 392 (1913); *First National Bank of Ada v. Womack*, 56 Okl. 359, 156 P. 207 (1916); *Oklahoma City National Bank v. Ezzard*, 58 Okl. 251, 159 P. 267 (1916); *Citizens Central National Bank v. Appleton*, 216 U.S. 196, 30 S.Ct. 364, 54 L.Ed. 443 (1910); 10 Am.Jur.2d, Banks §§ 276, 300."

C & S did, of course, benefit from this transaction by using the proceeds of the $50,000 loan from First National to collateralize its loan to Mr. McAlpine.

■ In Mr. Beville's letter of September 14, 1977 to First National he stated that C & S "agrees to repurchase your interest in a $50,000 loan being made to Mr. McAlpine." An obligation to "repurchase" a loan is treated as a guaranty, for "[n]o particular form of words is required for a guaranty." *St. Petersburg Bank & Trust Co. v. Boutin,* 445 F.2d 1028, 1030 (5th Cir.). In any event, in the same letter Mr. Beville referred to C & S's agreement to repurchase as "our guaranty." First National certainly could, and did, construe Mr. Beville's statements on behalf of C & S as a guaranty.

■ Oklahoma law explicitly holds that guaranty agreements are to be construed most strongly against the guarantor. *Butler Paper Co. v. Business Forms, Ltd.,* 424 F.2d 247 (10th Cir.); *Rucker v. Republic Supply Co.,* 415 P.2d 951 (Okl.). Thus the trial court properly concluded that Mr. Beville's September 14, 1977 letter was an enforceable written guaranty by C & S of the $50,000 loan from First National to Mr. McAlpine.

■ C & S argues also that First National failed to notify C & S of its acceptance of the contract of guaranty and consequently there is no binding guaranty. The trial court found that First National did accept C & S's offer of guaranty by performance when the Oklahoma bank made the loan. In *Ross v. Russell,* 475 P.2d 152, 156 (Okl.), the Supreme Court of Oklahoma stated as to such notice:

> "Acceptance in the guaranty context can, however, be by actual performance, 1 Corbin, Contracts, § 66, so notice in this context would be presumed, or be considered unnecessary, if Defendant knew or should have known that Plaintiff was in fact performing his end of the guaranty contract...."

The facts are clear that Mr. Beville and C & S certainly knew or should have known that First National made the $50,000 loan to Mr. McAlpine, thereby accepting the contract of guaranty. Thus no actual notice of acceptance was needed.

■ Appellant claims that the contract of guaranty was unenforceable because it was ultra vires. Yet under Georgia law (Ga. Code § 41A–1311) it is clear that C & S was empowered to enter the contract of guaranty if it had "a substantial interest in the performance of the transaction involved." The trial judge found that C & S had an interest in the loan made by First National to Mr. McAlpine. He specifically noted that C & S had an interest in the enhancement of Mr. McAlpine's Oklahoma oil and gas leases. In fact C & S's interest was substantial in that C & S subordinated its security to the repayment of First National's loan. Under these circumstances the contract of guaranty was not ultra vires.

The trial court awarded interest to First National at the rate of 10% from the date of the note to the date of judgment, and 12% thereafter until paid. C & S objects and argues that the interest must be limited to Oklahoma's legal rate of 6%, which applies in the absence of agreement between parties.

■ It is well settled that one's obligation "will not be enlarged beyond the clear express terms of the guaranty contract." *North American Life Ins. Co. v. Remedial Finance Corp.,* 62 P.2d 491, 493 (Okl.); *Lone Star Capital Corp. v. Wickersham,* 389 F.2d 616, 618 (10th Cir.). But C & S agreed to repurchase and the interest as represented by the promissory note which provided for payment of interest at the rate of 10%. Therefore, an award of interest at the rate provided in the note was proper.

■ The trial court awarded attorney fees, costs and expenses to First National. As stated above, C & S guaranteed First National's interest in the note signed by Mr. McAlpine. C & S did not limit the scope of its guaranty in any way. C & S guaranteed the payment of the note if Mr. McAlpine failed to pay it, and this includes payment of attorney fees, costs and expenses as therein provided.

AFFIRMED.