William R. BARTMANN,
Debtor–Appellant,

v.

MAVERICK TUBE CORPORATION
and Nucorp Supply, Inc.,
Creditors–Appellees.

No. 87–1139.

United States Court of Appeals,
Tenth Circuit.

Aug. 15, 1988.

Rehearing Denied Sept. 2, 1988.

Edwin L. Gage, Robinson, Locke, Gage, Fite & Williams, Muskogee, Okl., for debtor-appellant.

Stephen E. Schneider (Charles W. Shipley, Stephen J. Greubel and Blake K. Champlin on the brief), Tulsa, Okl., for creditors-appellees.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This is an appeal from the Eastern District of Oklahoma which reversed the bankruptcy court's decision to dismiss an involuntary petition in bankruptcy. The district court directed the bankruptcy court to grant the involuntary petition.[1]

## I. Facts

The petition initially was filed against debtor-appellant William R. Bartmann (debtor) by three creditors: Geneva Tube, Inc. (Geneva); creditor-appellee Nucorp Supply, Inc. (Nucorp); and creditor-appellee Maverick Tube Corporation.[2] Nucorp petitioned as an unpaid creditor based upon a 1983 personal guaranty signed by debtor, as owner of Hawkeye Pipe Services, Inc., in favor of "Nucorp Supply, Inc. dba Maverick Tubulars–Abilene Supply Division." The guaranty stated that debtor would:

> promptly pay to Seller any and all indebtedness (hereinafter referred to as indebtedness, whether arising out of a single or out of more than one transaction) now owing or that may hereafter become owing to it by the Buyer and any and all notes or other instruments when in evidence thereof....
>
> ....
>
> The undersigned do further jointly and severally agree that provisions of this agreement shall extend and insure [sic] to the benefit of Seller, its successors and assigns....

Appellees' Addendum to Response Brief.

In January 1986, Geneva withdrew as a petitioning creditor because its debt was subject to a bona fide dispute. One month later, American Express Company (American Express) joined the petition for involuntary bankruptcy. Debtor thereafter paid the American Express debt. In March 1986, American Express filed an unsuccessful motion for leave to withdraw as a petitioning creditor. Thereafter, debtor filed his sixth amended answer, alleging that a bona fide dispute existed as to the American Express debt on the date the petition was filed. He had listed the American Express debt as undisputed in his fourth and fifth amended answers.

The bankruptcy court dismissed the involuntary petition because it determined that the creditors had failed to satisfy 11

---

1. We note at the outset that several portions of the record were omitted because the tape recordings, which were later transcribed, were "indiscernible" or "indiscernible due to extreme static" or because a party had "turned [his] head from microphone." Resolution of this case required far more effort due to the inadequate tape-recorded record, which illustrates the many deficiencies associated with automatic tape recordings and subsequent transcriptions.

2. The petition for involuntary bankruptcy listed the following three creditors:

| Name | Principal Amount | Nature of Claim |
|---|---|---|
| Geneva Tube, Inc. | $ 10,978.20 | Check |
| Nucorp Supply, Inc. | $287,000.00 | Personal Guaranty |
| Maverick Tube Corp. | $272,000.00 | Personal Guaranty |

U.S.C. § 303(b)(1), which requires at least three petitioning creditors whose claims are not subject to a bona fide dispute to join in filing for involuntary bankruptcy. According to the bankruptcy court, an insufficient number of creditors met the conditions necessary to join in filing an involuntary petition. The bankruptcy court determined that Nucorp's claim resulted from a post-guaranty transaction in which Nucorp, not Maverick Tubulars–Abilene Supply Division (hereinafter referred to as "Abilene Supply Division" for clarity), sold merchandise to debtor. Rec. vol. I, doc. 10 at 1–2. The court then interpreted the guaranty as not extending to either Nucorp or the post-guaranty transaction. In its conclusions of law, the bankruptcy court stated:

> The language of the Guaranty, prepared by NUCORP's predecessor, is ambiguous and appears limiting as to identifying what entity or entities are beneficiaries. That is, the "dba" could, in this context, be a term of qualification as NUCORP had numerous subdivisions and business names. The facts surrounding the dealings between the parties do not permit a conclusion that, by the required proof, NUCORP has a bona fide claim—relying on the Guaranty—against Debtor.

*Id.* at 2.

Regarding the American Express claim, debtor maintained that because the debt was subject to a bona fide dispute, American Express was not a qualifying creditor under § 303(b)(1). The bankruptcy court, however, rejected this argument and held that "Debtor's payment to AMERICAN EXPRESS COMPANY post-Petition and pre-hearing is fatal to his claim of bona fide dispute." *Id.* at 1.

Certain creditors appealed to the district court, claiming that the bankruptcy court had erred in concluding that (1) the requirement of three petitioning creditors under § 303(b)(1) had not been met, and (2) Nucorp did not have a claim against the debtor pursuant to the guaranty. Debtor cross-appealed, asserting that the bankruptcy court erred in holding that the payment to American Express was fatal to his claim of a bona fide dispute.

The district court upheld the bankruptcy court's factual determination that the American Express debt was not subject to a bona fide dispute. Rec. vol. 1, doc. 1 at 3. It did conclude, however, that:

> [t]he Bankruptcy Court's conclusion that the language of the guaranty is 'ambiguous and appears limiting as to identifying what entity or entities are beneficiaries' is not supported by the record and is clearly erroneous....
>
> ... The Bankruptcy Court committed clear error by allowing such [parol] evidence to determine the confines of the guaranty.

*Id.* at 5. Deeming the guaranty unambiguous as to duration and scope, the district court stated that because the guaranty explicitly applied to Nucorp, "as the successor of the principal party to the guaranty, Maverick Tubular–Abilene Supply Division," Nucorp was entitled to enforce the guaranty against debtor. *Id.* Because the court interpreted the guaranty to be continuing in nature and not limited to a single credit transaction, it concluded that the bankruptcy court had erred in finding that the guaranty was executed in consideration of a single transaction. *Id.* Due to Nucorp's status as a proper petitioning creditor and the presence of the two other petitioning creditors (Maverick Tube and American Express), the district court ordered the bankruptcy court to grant the involuntary petition. *Id.*

Debtor appeals on several grounds. First, he argues that his post-petition, pre-hearing payment to American Express did not affect whether the debt was considered subject to a bona fide dispute on the petition filing date. He alternatively contends that American Express is precluded from acting as a petitioning creditor because the statute of limitations had run on its debt prior to the filing date. Second, he maintains that the district court erred in affirming the bankruptcy court's decision on the American Express claim because the claim was subject to a bona fide dispute. Third, he claims that the guaranty upon which Nucorp relied was not continuing and did not transfer to its successors and assigns, but rather applied only to the indebtedness

owed to Abilene Supply Division on a single transaction. Fourth, he alleges that the district court erred in directing the bankruptcy court to grant the petition for involuntary bankruptcy in the absence of a finding by the bankruptcy court that the debtor was "not paying such debtor's debts as such debts become due" pursuant to 11 U.S.C. § 303(h)(1). Finally, he maintains that the district court erred in directing the bankruptcy court to grant the petition for involuntary bankruptcy when unresolved issues remained before the bankruptcy court. We affirm in part, reverse in part and remand.

## II. Standards of Review

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse or modify the bankruptcy court's ruling or to remand the case for further proceedings. Bankr.R. 8013. It is bound to accept the bankruptcy court's findings of fact unless they are clearly erroneous, but may examine its conclusions of law *de novo*. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986); *see also In re Reid*, 773 F.2d 945, 946 (7th Cir.1985) (recognizing that courts should carefully scrutinize the creditors' filing of the involuntary petition because "the filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment").

We likewise review the bankruptcy court's factual findings under the clearly erroneous standard, while its conclusions of law are reviewable *de novo*. *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir.1987); *In re Branding Iron Motel, Inc.*, 798 F.2d at 399–400. A factual finding is clearly erroneous " 'when although there is evidence to

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In reviewing the factual findings, an appellate court may not weigh the evidence or reverse a finding because it would have decided the case differently. *Id.* A bankruptcy court's factual determinations will not be disturbed on appeal absent "the most cogent reasons appearing in the record." *Kansas Federal Credit Union v. Niemeier*, 227 F.2d 287, 291 (10th Cir.1955).

## III. Status of American Express as a Petitioning Creditor

### A. Potential Disqualification of American Express Because Its Debt was Subject to a Bona Fide Dispute under § 303(b)(1)

■ For creditors to successfully petition for involuntary bankruptcy, the bankruptcy court must determine that the creditors have standing and that the debtor generally has not been paying his debts as they become due. *In re Johnston Hawks, Ltd.*, 49 B.R. 823, 828 (Bankr.D.Hawaii 1985). Pursuant to 11 U.S.C. § 303(b)(1)[3], a petitioning creditor does not have standing when its debt is subject to a bona fide dispute. *See In re Nordbrock*, 772 F.2d 397, 399 (8th Cir.1985) (stating that the policy underlying the "bona fide dispute" exception is to prevent creditors from using the bankruptcy courts as means of collecting disputed claims). The term "bona fide dispute" is not defined in the Code and has been the subject of much debate.[4] We choose to adopt the standard propounded

---

**3.** An involuntary bankruptcy action is commenced by:
three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute ... if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1).

**4.** *See, e.g., In re Hope Communications, Inc.*, 59 B.R. 939, 943–44 (Bankr.W.D.La.1986); *In re Lough*, 57 B.R. 993, 996–97 (Bankr.E.D.Mich. 1986); *In re Ross*, 63 B.R. 951, 958–60 (Bankr.S. D.N.Y.1986); *In re Stroop*, 51 B.R. 210, 211–12 (D.Colo.1985); *In re Johnston Hawks Ltd.*, 49 B.R. 823, 830–31 (Bankr.D.Hawaii 1985).

by the Seventh Circuit as to what constitutes a bona fide dispute: "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987). The court need not determine the probable outcome of the dispute, but merely whether one exists. *Id.* Once the petitioning creditor establishes a prima facie case that its claim is not subject to a bona fide dispute, the burden shifts to the debtor to present evidence of a bona fide dispute. *In re Garland Coal & Mining Co.*, 67 B.R. 514, 521 (Bankr.W.D.Ark.1986); *see In re Taylor*, 75 B.R. 682, 684 (N.D.Ill.1987) (stating that to compel dismissal of an involuntary petition, the debtor must present proof of a bona fide dispute once the burden shifts because "[o]therwise, any debtor could defeat an involuntary petition ... by merely asserting that a bona fide dispute exists"). Under this objective approach, the debtor's subjective intent does not control whether a claim is considered to be subject to a bona fide dispute. *In re Tikijian*, 76 B.R. 304, 314 (Bankr.S.D.N.Y. 1987).

■ Debtor maintains that both the bankruptcy court and the district court erred as a matter of law because payment of a debt after the petition is filed, but before the involuntary bankruptcy hearing, does not alter a creditor's status as a petitioning creditor. Post-petition payment of a debt does not affect whether the debt is subject to a bona fide dispute. *Cf. E.L. "Bunch" Hullet, Inc. v. Universal C.I.T. Credit Corp.*, 259 F.2d 685, 688–89 (10th Cir.1958); *In re Garland Coal & Mining Co.*, 67 B.R. at 519. A bankruptcy court determines the number of petitioning creditors filing an involuntary bankruptcy petition on the date that the petition is filed. *In re Garland Coal & Mining Co.*, 67 B.R. at 519. Prior to the filing date, debtor had not paid his debt to American Express. Thus, the bankruptcy court erred as a matter of law in finding that the debt to American Express could not be subject to a bona fide dispute because the debtor had paid the debt after the petition was filed. We reverse on this issue. On remand, the court should determine whether the American Express claim was subject to a bona fide dispute.

B. The Statute of Limitations Defense as a Means of Disqualifying American Express as a Petitioning Creditor

■ Debtor also contends that American Express cannot be a petitioning creditor because collection of its debt is barred by the statute of limitations, citing *In re Putman*, 193 F. 464 (N.D.Cal.1911), and *In re All Media Properties, Inc.*, 5 B.R. 126 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981). Neither case supports debtor's proposition. First, in *In re Putman*, the court discussed "the position that if the claims of any one of the three creditors are not provable, ... the petition is defective." *In re Putman*, 193 F. at 467. Debtor relies on the same position. It is well-established under the present Code, however, that although a claim might not be provable, it still may be sufficient to confer standing on a petitioning creditor. 2 L. King, Collier on Bankruptcy ¶ 303.08 (15th ed. 1988); *see also In re Johnston Hawks Ltd.*, 49 B.R. at 829; *In re All Media Properties, Inc.*, 5 B.R. at 134.

Second, the court in *In re All Media Properties, Inc.* recognized that a petitioning creditor *may*, under certain circumstances, have standing even when the underlying debt is found to be unprovable because it is time-barred. *In re All Media Properties, Inc.*, 5 B.R. at 140. The court stated that the existence of a colorable defense would not disqualify a petitioning creditor.

> The Court has decided that where the issues concerning defenses to a claim of a petitioning creditor are not clear and require adjudication of either substantial factual or legal questions, the creditor should be recognized as qualified to join in the bringing of an involuntary bankruptcy petition. On the other hand, if it is clear that the claim is barred and the alleged debtor raises that defense, then that creditor should not be allowed to participate in the involuntary petition.

*Id.* at 134. Thus, for a statute of limitations defense to bar a creditor's partic-

ipation in an involuntary petition, it must be clear that the creditor's claim would be barred, without the resolution of substantial factual or legal questions. Because the debtor simply did not make a clear showing that the debt was time-barred,[5] the limitations defense does not preclude American Express from being a petitioning creditor.

## IV. The Status of Nucorp as a Petitioning Creditor

■■■ Debtor further argues that Nucorp cannot be a petitioning creditor because the guaranty covered the indebtedness owed only to Abilene Supply Division.[6] Courts must interpret a contract to give effect to the intent of the parties at the time of contract formation. *Mercury Investment Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla.1985); Okla.Stat.Ann. tit. 15, § 152 (West 1966); *see also Colonial Bank of Alabama v. Coker*, 482 So.2d 286, 290–91 (Ala.1985) (recognizing that courts generally apply the rules governing the interpretation and construction of contracts to guaranties). The parties' intent regarding a guaranty is to be discerned from the entire document. *Mercury Investment Co. v. F.W. Woolworth Co.*, 706 P.2d at 529; *First Nat'l Bank & Trust Co. of El Reno v. Stinchcomb*, 734 P.2d 852, 853 (Okla.App.1987); Okla.Stat.Ann. tit. 15, § 155. The language in a contract is given its plain and ordinary meaning unless technical terms are used. *Mercury Investment Co. v. F.W. Woolworth Co.*, 706 P.2d at 529; *State Capitol Bank of Oklahoma City v. Norick*, 550 P.2d 587, 591 (Okla. App.1976) (indicating the reluctance of Oklahoma courts to judicially rewrite guaranties); Okla.Stat.Ann. tit. 15, § 160. Where the guaranty language is unambiguous, its purpose and meaning must be determined from the four corners of the document without using parol evidence to vary, modify or contradict the terms of the instrument. *First Nat'l Bank & Trust Co. of El Reno v. Stinchcomb*, 734 P.2d at 853; *Ollie v. Rainbolt*, 669 P.2d 275, 279 (Okla.

1983); Okla.Stat.Ann. tit. 15, § 155; *see also In re Tikijian*, 76 B.R. at 316 (stating that the guarantor's subjective beliefs regarding the guaranty which were not communicated to the creditors are inconsequential). A term is unambiguous where it is reasonably and fairly susceptible of only one meaning. *Taylor v. Beech Aircraft Corp.*, 407 F.Supp. 69, 72 (W.D.Okla.1976).

■■■ A guaranty is deemed continuing if it indicates a future course of dealing, which is not limited to a single transaction, for an indefinite period of time or until it is revoked. *Rucker v. Republic Supply Co.*, 415 P.2d 951, 953; Okla.Stat. Ann. tit. 15, § 336. Liability under a continuing guaranty continues until the guaranty is revoked unless it contains an express limitation regarding the duration of the guarantor's responsibility. *Id.* Guaranties are construed most strongly against the guarantor. *First Nat'l Bank of Hominy, Oklahoma v. Citizens & S. Bank of Cobb County, Marietta, Georgia*, 651 F.2d 696, 699 (10th Cir.1981). But the scope of a guaranty will not be expanded beyond its express terms. *Id.*

■■■ In the instant case, the scope and meaning of the guaranty are unambiguous. The guaranty language specifies that "the provisions of this agreement shall extend and insure [sic] to the benefit of Seller, its successors and assigns." Although Oklahoma courts have not defined this term in the context of a guaranty, other state courts have found this term to be unambiguous and have recognized its plain meaning: the guarantor promises to guarantee the debts of successors of the guaranteed party. *See, e.g., Schepps v. First Security Nat'l Bank of Beaumont, Texas*, 462 S.W. 2d 341, 342–43 (Tex.App.1971); *Interstate Trust & Banking Co. v. Sabatier*, 189 La. 199, 179 S. 80, 82 (1937); *North Texas Nat'l Bank v. Thompson*, 23 S.W.2d 494, 498–99 (Tex.App.1929); *see also Carlock v. National Co–Operative Refinery Assoc.*, 424 F.2d 148, 149–50 (10th Cir.1970) (stat-

---

**5.** We note that the debtor actually paid the debt and now argues that it was time-barred.

**6.** Debtor claims that he should not be held to the guaranty because he was unaware of its contents before signing it. In the absence of

fraud, misrepresentation or deceit, none of which are present here, a party to a contract cannot avoid it on the ground that he failed to read it. *Vails v. Southwestern Bell Telephone Co.*, 504 F.Supp. 740, 745 (W.D.Okla.1980). Thus, we disregard this argument.

ing that such terms in a contract unambiguously mean that successors and assigns are covered by the agreement). Consequently, the identical term used in the guaranty at issue is unambiguous and extends to Nucorp as a successor in interest to Abilene Supply Division.

Moreover, the express language of the guaranty indicates that it is continuing in nature. The guaranty states that debtor promises to:

promptly pay to Seller any and all indebtedness (hereinafter referred to as indebtedness, whether arising out of a single *or out of more than one transaction*) now owing or *that may hereafter become owing to it* by [debtor]. . . .

(emphasis added). The language clearly evinces the parties' intention that debtor would guarantee future dealings between himself and Abilene Supply Division, its successors or assigns. *See, e.g., Schepps v. First Security Nat'l Bank of Beaumont, Texas,* 462 S.W.2d at 342–43. This interpretation is bolstered by the fact that the guaranty does not contain express language limiting its duration. *See Rucker v. Republic Supply Co.,* 415 P.2d at 953; *Goeke v. Merchants Nat'l Bank & Trust Co. of Indianapolis,* 467 N.E.2d 760, 767 (Ind.App.1984). Because the guaranty is unambiguous, we agree with the district court that the bankruptcy court erred in admitting extrinsic evidence to determine the meaning of the guaranty. We also affirm the district court's legal conclusion that the guaranty is continuing and covers all successors and assigns of Abilene Supply Division. Thus, Nucorp has standing as a petitioning creditor.

## V. The Requirement of an Express Finding of Insolvency Under § 303(h)(1)

■ Debtor further contends that the bankruptcy court erred by granting the involuntary petition without making a finding under 11 U.S.C. § 303(h)(1) that the debtor was "not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute." To grant an involuntary petition, the bankruptcy court must determine whether the creditors met their burden of

proving that the debtor was not paying his debts once due. *See In re Johnston Hawks, Ltd.,* 49 B.R. at 828; *In re R.N. Salem Corp.,* 29 B.R. 424, 431 (S.D.Ohio 1983) (indicating that a bankruptcy court should specify the standard applied and the factors upon which it based its finding regarding the § 303(h)(1) requirement). This determination should be made as of the date that the involuntary petition was filed. *Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.,* 779 F.2d 471, 475 (9th Cir.1985).

Because the bankruptcy court did not make this factual finding due to its dismissal of the involuntary petition, the district court, as a reviewing court, did not have a sufficient basis for ordering the bankruptcy court to grant the involuntary petition. We therefore must reverse on this issue. If the court determines that three qualified creditors have petitioned for involuntary bankruptcy, it must then determine whether the creditors have met their burden of proof under 11 U.S.C. § 303(h)(1). In determining whether the creditors met this burden, the bankruptcy court should examine the totality of the circumstances, balancing the interests of the debtor with those of the creditors. *See In re Molen Drilling Co.,* 68 B.R. 840, 846 (Bankr.D. Mont.1987); 2 L. King, Collier on Bankruptcy ¶ 303.12 (15th ed. 1987).

## VI. Conclusion

Nucorp has standing as a petitioning creditor under § 303(b)(1) based upon its status as successor to the guaranty. Whether American Express is a petitioning creditor, however, remains for resolution by the bankruptcy court, which must determine if the debt was subject to a bona fide dispute. If that court finds that American Express is a petitioning creditor, three qualified creditors will have petitioned and the bankruptcy court must then make a finding pursuant to § 303(h)(1) as to whether the debtor was paying his debts as they came due.[7]

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

---

7. Debtor proposes that we remand this case to the bankruptcy court because certain issues

were raised below which were not subsequently resolved due to the dismissal of the petition for

involuntary bankruptcy. Because the case is remanded on other grounds, it is unnecessary for this court to address these issues at this time. Issues previously raised in the bankruptcy court, which are relevant in light of our disposition, may be addressed on remand.