**In re SOONER TRANSPORTATION SERVICES, INC., Debtor.**

**Bankruptcy No. 88–6454–TS.**

United States Bankruptcy Court,
W.D. Oklahoma.

Aug. 9, 1989.

Kenneth I. Jones, Jr., of Jones, Blaney & Williams, Oklahoma City, Okl., for F.D.I.C.

G. Rudy Hiersche, Oklahoma City, Okl., for Official Unsecured Creditors' Committee.

Michael Paul Kirschner, of Hastie & Kirschner, Oklahoma City, Okl., for trustee.

## ORDER DENYING MOTION FOR USE OF CASH COLLATERAL

JOHN TeSELLE, Bankruptcy Judge.

This matter comes before the Court for a determination of whether Sooner Transportation Services, Inc. (hereinafter "Sooner"), should be authorized to make a $1,000,-000.00 payment to Federal Deposit Insurance Corporation, in its corporate capacity (hereinafter the "FDIC"). On April 27, 1989, FDIC and Sooner filed their Joint Motion for Use of Cash Collateral Not in the Ordinary Course of Business (hereinafter the "Joint Motion"). The Joint Motion sought this Court's authorization for Sooner to pay $1,000,000.00 to FDIC for application against FDIC's secured claim.

No objections to the Joint Motion having been filed, an Order Allowing Payment of Cash Collateral Not in the Ordinary Course of Business (hereinafter the "Order"), was presented to and entered by the Court on June 20, 1989. During the hearing on Sooner's disclosure statement held the next day, objections to the Order were voiced for the first time by the Unsecured Creditors' Committee and various other creditors. This resulted in the Court revoking its Order and setting an emergency hearing for the next day, June 22, 1989, to consider the objections to the Joint Motion.

After hearing the arguments of counsel for Debtor, FDIC, and various other creditors, at the conclusion of the June 22 hearing the Court took the matter under advisement and granted the parties seven days in which to submit briefs on the issues presented. Those briefs having been received, the matter is now ready for determination.

### Facts

Sooner is a wholly-owned subsidiary of Mistletoe Express Service (hereinafter "Mistletoe"). On February 18, 1986, Sooner executed a guaranty agreement (hereinafter the "Guaranty Agreement") on Mistletoe's behalf, in favor of The First National Bank and Trust Company of Oklahoma City (hereinafter the "Bank").[1] The Guaranty Agreement references two irrevocable standby letters of credit issued by Bank in Mistletoe's behalf in favor of Protective Insurance Company and Liberty Mutual Insurance. Guaranty Agreement at 2. To secure its obligation under the Guaranty Agreement Sooner executed a security agreement (hereinafter the "Security Agreement") contemporaneously therewith, granting Bank a security interest in, *inter alia*, Sooner's accounts receivable.

At the time the Guaranty Agreement was executed Mistletoe's obligation to Bank appears to have been $9,714,872.00. In its brief filed on June 29, 1989, FDIC stated Mistletoe's indebtedness to FDIC as of that date was $6,663,906.00. FDIC's Brief at 5. The estimated value of collateral owned and pledged by Mistletoe to secure that indebtedness was $8,406,-000.00.[2] *Id.* According to these figures,

---

1. On July 14, 1986, the Bank was declared insolvent by the Comptroller of the Currency. Certain assets of the failed Bank were transferred to another banking institution. The remaining assets, including the Guaranty Agreement here at issue, were originally held by FDIC in its receivership capacity then subsequently transferred to FDIC in its corporate capacity. Thereby, FDIC became the successor in interest to the Bank's rights under the Guaranty Agreement.

2. This collateral does not include Sooner's accounts receivable, which are at issue herein.

FDIC would appear to be an oversecured creditor as to Mistletoe.

## First Issue

The initial issue presented is whether Sooner's obligation to Bank (now FDIC) under the Guaranty Agreement is limited to the two irrevocable standby letters of credit, or whether Sooner guaranteed payment of Mistletoe's entire indebtedness.

## Contentions of the Parties

FDIC contends Sooner is liable under the Guaranty Agreement for any amounts Mistletoe owed Bank, up to $9,714,872.00. Furthermore, FDIC claims to be an oversecured creditor as to Mistletoe's indebtedness, and thus entitled to interest, costs and attorney fees in the Mistletoe bankruptcy proceeding. 11 U.S.C.A. § 506(b) (West Supp.1989). In addition to claiming a security interest in assets of Mistletoe, by virtue of the Security Agreement FDIC alleges it has a security interest in Sooner's accounts receivable, the proceeds from which total approximately $1,500,000.00 at this time. In order to decrease the amount of indebtedness upon which FDIC argues post-petition interest is accruing, FDIC seeks to apply $1,000,000.00 of the proceeds from Sooner's accounts receivable towards Mistletoe's indebtedness.

In seeking enforcement of the Guaranty Agreement, FDIC relies upon authority holding guaranty contracts are to be strictly construed against the guarantor. *First Nat'l Bank v. Citizens and So. Bank*, 651 F.2d 696, 699 (10th Cir.1981) (citations omitted); *Butler Paper Co. v. Business Forms, Ltd.*, 424 F.2d 247, 251 (10th Cir.1970) (footnote omitted).[3] FDIC also asserts that Oklahoma law provides a guaranty is merely a contract which should be interpreted according to the parties' intentions. *Rucker v. Republic Supply Co.*, 415 P.2d 951, 953 (Okla.1966).

According to Sooner, its liability under the Guaranty Agreement is limited to the two irrevocable standby letters of credit, the face amount of which total $714,-872.00.[4] In support of its position, Sooner argues any ambiguities in the Guaranty Agreement should be interpreted against its drafter (Bank/FDIC). *Williams Petroleum Co. v. Midland Coop., Inc.*, 679 F.2d 815, 821 (10th Cir.1982) (citation omitted). Additionally, Sooner contends where an agreement contains general and specific provisions which define rights of the parties differently, such rights are limited by its specific provisions. *Occidental Life Ins. Co. v. Marmaduke Corbyn Agency*, 187 F.2d 553, 555 (10th Cir.1951).

Sooner also points out that the Security Agreement incorporates the Guaranty Agreement by reference, and the two documents must be interpreted together. That being so, a limitation in the Guaranty Agreement limits the Security Agreement as well.

## Applicable Law

Although much confusion exists in the law as to the distinction between a "surety" and a "guarantor," the body of law known as Suretyship is equally applicable to both sureties and guarantors. L. Simpson, Handbook on the Law of Suretyship (1950). The Uniform Commercial Code realistically provides that "[s]urety includes guarantor." Okla.Stat.Ann. tit. 12A, § 1–201(40) (West Supp.1989). Whatever distinction might exist in the common or statutory law has little or no practical effect, as the distinctions are technical at best. *See Central Surety & Ins. Corp. v. Richardson*, 183 Okl. 38, 43–44, 80 P.2d 663, 670 (1938). Even though the Oklahoma statutes define the terms separately,[5] any attempt to distinguish between the

---

3. The *First Nat'l Bank* case cites the *Butler Paper* case and *Rucker v. Republic Supply Co.*, 415 P.2d 951, 954 (Okla.1966), in support of this proposition. 651 F.2d at 699. *Riverside Nat'l Bank v. Manolakis*, also cited by FDIC, explains that guaranty contracts are to be construed against the guarantor in order to protect the party who parted with property in reliance on the guarantee. 613 P.2d 438, 442 (Okla.1980). As set forth below, that basis for FDIC's position is not present in this case.

4. Both parties agree that neither of the letters of credit was ever funded, and that they are no longer enforceable.

5. Title 15, § 321 defines "Guaranty" as "a promise to answer for the debt, default or miscarriage of another person," while § 371 defines "Surety" as "one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person,

terms in application is an exercise in frustration, if not futility. Accordingly, as utilized in this opinion, the term "surety" includes guarantor.

The suretyship concept can best be analyzed by use of the following diagram:

Figure 1

K-1 refers to the contractual obligation the Principal owes the Creditor; K-2 refers to the contractual undertaking of the Surety to the Creditor; K-3 refers to any relationship which exists between the Principal and the Surety. Whether implied or expressed, K-2 is a contractual agreement, and as such its interpretation is governed by the law of Contracts. *New York Casualty Co. v. Wallace & Tiernan*, 174 Okl. 278, ——, 50 P.2d 176, 178 (1935); *Okla.Stat.Ann.* tit. 15, § 374 (West 1966).

Most importantly, the metes and bounds of the Surety's obligation are defined by K-2, which obligation cannot be enforced beyond its express terms. *Barbero v. Equitable Gen'l Ins. Co.*, 607 P.2d 670 (Okla.

1980). However, where ambiguities exist, specific provisions prevail over general provisions, and the contract must be interpreted against its drafter. *Occidental Life*, 187 F.2d at 555; *Williams Petroleum*, 679 F.2d at 821.

As will be seen from the Court's resolution of this dispute, the law of asset marshalling is not applicable in this matter, thus will not be addressed in this opinion.

Applying the Law to the Facts

Utilizing Figure 1, the relationships of the transactions upon which Sooner's Guaranty Agreement was predicated can be shown as follows:

Figure 2

Here, K-1 represents the obligation Mistletoe incurred for insurance coverage received from Protective Insurance Company and Liberty Mutual Insurance; K-2 represents the two unfunded letters of credit

Bank issued for the benefit of the insurance companies; and K-3 represents the Mistletoe–Bank agreement for the issuance of the letters of credit.

Next, Sooner's relationship to the parties can be shown as follows:

or hypothecates property as security therefor." *Okla.Stat.Ann.* tit. 15, §§ 321, 371 (West 1966 &

Supp.1989).

Figure 3

K–1 here is the same as K–3 shown in Figure 2; K–2 is the Guaranty Agreement between Sooner and Bank; and K–3 represents the parent-subsidiary relationship between Mistletoe and Sooner.

Figures 2 and 3 can be combined as follows:

Figure 4

## Discussion

■ The pertinent language of the Guaranty Agreement appears to be so clear on its face that resort need not be made to rules of construction.[6] The printed portion thereof provides in paragraph 11:

"This agreement shall be ... unlimited in amount *unless specifically limited as hereinafter set forth.*"

Guaranty Agreement at 2 (emphasis added). Thereafter are the typewritten words:

"NINE MILLION SEVEN HUNDRED FOURTEEN THOUSAND EIGHT HUNDRED SEVENTY TWO AND NO/100

DOLLARS ($9,714,872.00) Plus any and all principal, interest, attorneys' fees, expenses of collection and other sums now or hereafter owing by Borrower to the Bank thereunder."

Guaranty Agreement at 2. The above-quoted typewritten provision appears to comprise words of limitation applicable to Sooner's liability. There follows the additional typewritten provision which further limits Sooner's obligation. It provides:

This Guaranty is given to secure payment of a certain Irrevocable Standby Letter of Credit No. S–4974 issued by

6. Even if the Guaranty Agreement were found to be ambiguous, this Court is of the opinion such a finding would not mandate construing it against Sooner. As noted above, the underlying reason for construing guaranty contracts against the guarantor is to protect parties who part with property in reliance on the guarantee. *Manolakis,* 613 P.2d at 442. Here Bank parted with no property as the letters of credit were

never funded. Therefore, absent facts necessitating resort to that policy consideration, where ambiguities exist specific provisions prevail over general provisions, and the contract must be interpreted against its drafter. *Occidental Life,* 187 F.2d at 555; *Williams Petroleum,* 679 F.2d at 821. In this case, Bank must be deemed to be the drafter as the Guaranty Agreement executed by Sooner was on Bank's own form.

The First National Bank and Trust Company of Oklahoma City in Mistletoe Express Service's behalf to Protective Insurance Co. in the amount of $294,872.00, and a certain Irrevocable Standby Letter of Credit No. S–5464 issued by The First National Bank and Trust Company of Oklahoma City in Mistletoe Express Service's behalf to Liberty Mutual Insurance in the amount of $420,000.00, and any and all promissory notes related thereto.

*These latter words spell out the precise undertaking of Sooner.*

The figure of $9,714,872.00 appears in the Guaranty Agreement as a limitation on Sooner's liability. This indebtedness existed prior to the issuance of the letters of credit and Sooner's execution of the Guaranty Agreement. Thus, the apparent intent of the parties as evidenced by the surrounding circumstances persuades this Court that the nine million dollar indebtedness did not constitute any part of the consideration given by Mistletoe for the issuance of the letters of credit.[7]

A review of the Security Agreement, referred to in paragraph 12 of the Guaranty Agreement, does not alter this result. The final paragraph of the Security Agreement is entitled "LIMITATION OF LIABILITY" and again lists the dollar amount of $9,714,-820.00 as a limitation of the surety's liability. Security Agreement at 5. However, the paragraph is not dated, nor does it reflect the initials of the Debtor and Secured Party as required by its own terms to make it operative.[8] The failure of the parties to date and initial the paragraph reduces any claim FDIC might have against Sooner to an unsecured claim, at best.

7. In this case, at the time Sooner executed the Guaranty Agreement, the Bank did not provide any new or additional funds to Mistletoe. Nor does it appear the Guaranty Agreement was given in return for renewal of any obligation of Mistletoe. Only the two letters of credit were issued by Bank at that time, and they were never funded.

8. The final paragraph of the Security Agreement provides:

## Second Issue

Having determined that Sooner's obligation to FDIC is limited to guaranteeing payment of the two standby letters of credit, the Court must now decide whether Sooner has any liability to FDIC if the letters of credit have never been, and never will be, funded.

### Applicable Law and Discussion of Second Issue

The basic nature of a surety's obligation is to answer for the debts of another. *Linton v. Chestnutt–Gibbons Grocer Co.,* 30 Okl. 103, 103–06, 118 P. 385, 386 (1911). In this case, Sooner agreed to answer to the Bank for the indebtedness of Mistletoe which would arise in the event Bank was required to advance monies to the insurance companies on Mistletoe's behalf under the letters of credit. Guaranty Agreement at 2. As the letters of credit were unfunded as of the time the Bank was closed, and are now no longer enforceable, Mistletoe is not now, nor will it ever be, indebted to the Bank under these letters of credit. The event needed to trigger Sooner's liability thereunder has not and will not take place. Thus, Sooner no longer has any obligation to the Bank under the Guaranty Agreement and the Security Agreement.

### Decision

Sooner's liability to the Bank under the terms of the Guaranty Agreement is limited to any amounts advanced by the Bank on Mistletoe's behalf under the two letters of credit. No monies having been advanced under the letters of credit, and the letters of credit being no longer enforceable, Sooner's liability thereunder has been extinguished. Because Sooner has no liability under the Guaranty Agreement, FDIC has no claim to Sooner's accounts

"*Limitation of Liability.* Notwithstanding anything to the contrary stated herein the extent of liability of the Debtor hereunder shall be limited in amount to $9,714,820.00. This provision is operative *only if filled in at time of execution, initialed and dated by the Debtor and Secured Party.*"
Security Agreement at 5 (emphasis added).

receivable under the Security Agreement, and thus, no claim against Sooner's bankruptcy estate.

IT IS SO ORDERED.